**LEAR SIEGLER, INC., Appellant,**

**v.**

**AEROQUIP CORPORATION and Midtown Ignition and Parts Co., Appellees.**

**Appeal No. 83–1005.**

United States Court of Appeals, Federal Circuit.

May 3, 1984.

---

William Douglas Sellers, Pasadena, Cal., argued for appellant. With him on the brief was W. Melville Van Sciver, Chicago, Ill.

Don K. Harness, Birmingham, Mich., argued for appellees. With him on the brief were John C. Sterritt and Jerry K. Harness, Birmingham, Mich.

Before MARKEY, Chief Judge, and DAVIS and BENNETT, Circuit Judges.

BENNETT, Circuit Judge.

This is an appeal under 28 U.S.C. § 1295(a)(1) (1982) of the decision of the United States District Court for the Northern District of Illinois, Eastern Division, entered without a jury on April 13, 1983, declaring United States Patent No. 3,291,-004 owned by appellant, Lear Siegler, Inc. (Lear), invalid and, if valid, not infringed by the Maxibrake II brake assembly manufactured by appellee, Aeroquip Corporation (Aeroquip) and sold by appellee, Midtown Ignition and Parts Company.

The determination below of invalidity is affirmed. Accordingly, the issue of infringement will not be reached.

## BACKGROUND

United States Patent No. 3,291,004 to Stevenson, et al. (the Stevenson patent), issued December 13, 1966, relates to a brake unit for vehicles in which brakes normally operated by air pressure are automatically applied by a powerful spring upon a loss of that pressure. Figures 2 and 3 of the patent are included below with nonessential reference numerals deleted.

Fig. 2

The Stevenson Patent

Fig. 3

The Stevenson Patent

Normal brake operation is effected by the action of compressed air entering the right side of flexible heavy-duty diaphragm 26 located in brake booster chamber 25. The resultant air pressure against diaphragm 26 moves it, plate 27, and attached rod 15 leftward against the bias of spring 28 to apply the brakes. (Neither Figure 2 nor 3 depicts the brake assembly in such a state of selective activation.) The same compressed air as is selectively applied to booster chamber 25 to operate the brakes is supplied continuously to the left side of a second heavy-duty diaphragm 32 located in emergency chamber 30. The pressure of this compressed air against diaphragm 32 is sufficient to move bearing plate 36 into its extreme rightward position, compressing emergency spring 38, as depicted in Figure 2. Plate 34 attached to force transmission shaft 33 is urged by spring 35 against diaphragm 32.

In the absence of the mechanisms housed in emergency chamber 30, a loss of air pressure would preclude operation of the brakes. In such circumstances, however, air pressure is lost simultaneously in emergency chamber 30, thereby permitting emergency spring 38 to expand, moving bearing plate 36, diaphragm 32, and force transmission shaft 33 leftward to the position shown in Figure 3. Correspondingly, shaft 15 is moved leftward to apply the brakes automatically, despite the failure of air pressure.

Once a vehicle with failed brakes has been stopped in this manner, it is desirable to be able to manually release, or "lock out," the brakes, so it can be moved from the roadside or repaired. The issues upon which this appeal focuses relate to the means provided for mechanically retracting the powerful emergency spring to do this.

The Stevenson patent makes reference in this regard to the prior teachings of a co-pending patent application, Serial No. 97,368, a continuation application of which ultimately issued prior to the Stevenson patent on November 15, 1966, as United States Patent No. 3,285,672 to Avrea (the Avrea patent). A portion of Figure 2 from this patent is reproduced below with nonessential reference characters deleted.

FIG. 2

The Avrea Patent

The Avrea patent discloses a brake assembly in which an air pressure activated booster section 49 and an emergency chamber 33 housing a flexible diaphragm 101, a bearing plate 111, and powerful emergency springs 113 and 114 function together similarly to corresponding structure disclosed in the Stevenson patent. Thus, upon failure of the air pressure necessary to selectively operate the brakes in the Avrea patent, air pressure is lost on the left of diaphragm 101 and emergency springs 113 and 114 expand, forcing bearing plate 111 leftward to apply the brakes automatically.

Emergency brake "lock out" is achieved using a retraction shaft in the form of a

threaded stem 118. When one end of stem 118 is threaded into the rear of bearing plate 111, the other end extends beyond housing 108 through opening 109 therein, even when the emergency brake is activated. Nut-and-washer assembly 120 can be turned onto this end of stem 118 to engage housing 108. Continued rotation of assembly 120 then draws stem 118 out of emergency chamber 33, retracting bearing plate 111 and compressing springs 113 and 114 to release the brakes. The specification of the Avrea patent in describing the nature of the attachment of stem 118 to bearing plate 111 discloses only that each brake assembly "is equipped with a threaded stem 118 threaded into hub 110 of follower [or bearing plate] 111."

The free end 126 of stem 118 is marked with a series of indicator bands 129. When the emergency brake is on, some of the indicator bands 129 remain exposed beyond a removable protective cover disc 122 and serve as a visual indication of the remaining wear or braking capacity of the brake shoe linings.

In the Stevenson patent the means for compressing the emergency spring to release the brakes is a lockout tool 18 (shown in Figure 3, above) which comprises a threaded stud having at one end a pair of laterally extending projections 20. These co-operate in bayonet-like fashion with a hook portion 37 on the rear of bearing plate 38 to removably attach tool 18 to plate 38. When the expansion of emergency spring 38, as in Figure 3, has set the emergency brakes, this attachment is accomplished by removing a dust plug 40 from a hole 39 in the casing 12 and inserting the end of lockout tool 18 to establish the desired connection with bearing plate 36. A nut 19 is then threaded down the free end of tool 18 to encounter the exterior of casing 12. Further rotation of nut 19 draws the shaft of tool 18 outward, retracting bearing plate 36 and compressing emergency spring 38, in an identical manner as that disclosed in the Avrea patent. As the lockout tool of the Stevenson patent is explicitly remova-ble from its attachment to bearing plate 36, a storage pocket for its convenient retention and protection with nut 19 is provided on the exterior of casing 12.

The claims of the Stevenson patent are thus directed to a brake operating booster in combination with a means for mechanically operating the booster in an emergency. This mechanical means, which is recited as comprising a housing containing a diaphragm, a coil spring, and a bearing plate, also includes a pocket on the housing for storing a lockout tool which can be attached to the bearing plate to compress the spring and manually release the emergency brake. Independent claim 1 [1] recites one end of the lockout tool as being so constructed as to "detachably interlock with [a] temporary holding means" on the bearing plate. Dependent claim 2 recites in additional detail the nature of the structure of the bearing plate and lockout tool required for effecting the bayonet-type detachable interlock between the two.

Lear brought suit against Aeroquip for infringement of these claims. The district court found that the Avrea patent, while constituting the closest prior art to the Stevenson patent, had not been before the examiner who allowed it to issue. It conducted an analysis of the obviousness of the claims at issue according to the directions of *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966). Setting forth findings as to the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the pertinent art, the court concluded that the Stevenson patent was invalid for obviousness under 35 U.S.C. § 103. If valid, the Stevenson patent was further found to be not infringed by the accused product of Aeroquip.

Lear appealed both conclusions, but as that regarding invalidity will be affirmed here, the question of infringement will not be discussed.

**1.** The claims at issue can be found in the Appen-        dix at the end of this opinion.

OPINION

I

The presumption of patent validity found in 35 U.S.C. § 282[2] is but a procedural device which places on a party asserting invalidity the initial burden of going forward to establish a prima facie case on that issue. The decisionmaker is thus required to begin by accepting the proposition that the patent is valid and then look to the challenger for proof to the contrary. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534, 218 USPQ 871, 875 (Fed. Cir.1983). Additionally, section 282 establishes that the burden of persuasion on the issue of invalidity also rests throughout the litigation with the party asserting invalidity, though this burden *may* be more easily carried by evidence consisting of art more pertinent than that considered by the examiner. *Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick Co.*, 730 F.2d 1452 at 1459 (Fed.Cir.1984); *Solder Removal Co. v. United States International Trade Commission*, 582 F.2d 628, 633, 199 USPQ 129, 133, 65 C.C.P.A. 120 (1978). "In the end, the question is whether *all* the evidence establishes that the validity challenger so carried his burden as to have persuaded the decisionmaker that the patent can no longer be accepted as valid." *Stratoflex*, 713 F.2d at 1534, 218 USPQ at 876. Thus, a holding that the burden has been met is synonymous with invalidity. *Environmental Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 699 n. 9, 218 USPQ 865, 871 n. 9 (Fed.Cir.1983), *cert.*

**2.** 35 U.S.C. § 282 reads in pertinent part as follows:

"§ 282. Presumption of validity; defenses

"A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."

**3.** Actually the following two patents issued to Avrea, which appear in the record, matured from applications which were co-pending with

*denied,* —— U.S. ——, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984).

Lear correctly challenges as erroneous the district court's conclusion that the Stevenson patent should not be entitled to the statutory presumption of patent validity, because the Avrea patent application[3] was not cited by the examiner when the Stevenson patent issued. The failure to cite specific prior art is not conclusive proof that the art was not considered. *Solder Removal*, 582 F.2d at 633 n. 9, 199 USPQ at 133 n. 9. Further, the introduction at trial of prior art even more pertinent than that considered by the examiner does not destroy the presumption of validity or shift to the patentee the basic burden of persuasion on invalidity. "The presumption continues its procedural burden-assigning role throughout the trial." *Stratoflex*, 713 F.2d at 1534, 218 USPQ at 875–76.

Thus can be deduced the futility of arguing one way or the other whether the presumption of validity applies as to specific prior art references, either on the basis of actual consideration by the examiner or otherwise. Here the parties, in an effort to effect or forestall application of the presumption to the disclosure of the Avrea patent, have contended at length over whether that disclosure was actually before the examiner allowing the Stevenson patent. The presumption of validity, however, operates not in relation to particular prior art, but as to parties and the roles

the application that issued as the Stevenson patent: U.S. Patent No. 3,285,672 issued November 15, 1966, and U.S. Patent No. 3,359,869 issued December 26, 1976. Both have effective filing dates of at least March 21, 1961, the filing date of shared patent continuation-in-part application Serial No. 97,368. As the specifications of both of these patents to Avrea are substantially similar and no difference therebetween is pressed by either party as relevant to the disposition of this case, reference throughout this opinion to the Avrea patent will be to the earlier of the two to issue, U.S. Patent No. 3,285,672, Figure 2 of which has been included and described earlier in the main text.

they take toward invalidity during litigation.[4]

█ Accordingly, it is our determination that any alleged error of the district court in denying Lear the benefit of the presumption of validity was rhetorical, rather than substantive, because the record does not indicate that the district court correspondingly placed on Lear the burden either of making a prima facie case for validity or of carrying a burden of persuasion to prove the same. Instead, the district court concluded with the evaluation that "any arguable presumption of validity is far more than overcome by the factors averted to" in its other findings and conclusions. This statement is taken to mean that in the opinion of the district court, the burden of persuasion as to invalidity was successfully carried by Aeroquip. It is upon a review of that conclusion, rather than upon maneuvering related to presumption of validity, which is the subject of the remainder of this opinion.

## II

In setting forth the scope and content of relevant prior art, the district court listed the following six United States patents named as references in the Stevenson patent itself:

| U.S. Patent No. | Patentee |
| --- | --- |
| 1,429,024 | Douglas |
| 2,976,085 | Grogan |
| 3,107,583 | Woodward |
| 3,109,347 | Brodl, et al. |
| 3,112,959 | Kateley |
| 3,152,521 | Cruse |

Each is discussed below only if relevant to our holding.

Douglas relates to a compressor of springs to be used as automobile shock absorbers. Each spring is retained in a compressed state between a cross plate and a disc by a retaining bolt passing through both. A nut threaded onto one end of the bolt secures the cross plate. The other end of the bolt is provided with a transverse pin which cooperates in bayonet-fashion with an aperture in the center of the disc to retain the disc in a manner suggestive of the detachable interlock recited in claim 2 of the Stevenson patent.

The patent to Grogan involves a spring-actuated automatic safety brake unit, the emergency spring of which acts against a cup-like bearing plate for expansion when the pneumatic pressure by which the brake is normally operated falls below an effective value. To enable manual lockout of the emergency brake, a rod threaded on its free end is attached to the back of the bearing plate to lie on the axis of the emergency spring. A nut threaded down the rod encounters a keeper maintained rigidly in relation to the back of the spring, so that continued rotation of the nut draws the rod and attached bearing plate backward, compressing the emergency spring in the manner of both the Avrea and Stevenson patents. Of significance to the issues here contested is the unequivocal manner in which the permanent nature of the attachment of the rod to the bearing plate is described in the specification as being "fixed, as by welding." The figures of the reference show the rod projecting in uniform diameter into the cross-hatched, cross-sectional body of the plate without provision for tolerance or threading.

Both the Woodward and Kateley patents involve manual release mechanisms for locking out spring-activated emergency brakes. Each shows a removable dust cover or cap for sealing from the environment interior elements which actually effect spring compression. As in the Grogan patent, Kateley employs a shaft or rod, "one end of which is fixed to [a] spring retainer plate ... and the other end of which is threaded ... to receive a nut." The fig-

4. As to the burden of persuasion on the issue of invalidity, however, actual consideration of individual references by the examiner does interact with the teachings they disclose reducing the capacity of each to undermine validity to the degree that actual consideration and accurate comprehension by the examiner of those teach-ings in relation to allowed claims is clearly evidence. Naturally there is the occasional reference which contains disclosure so poignantly impacting upon patentability as to render virtually irrelevant the fact of its consideration by the examiner during prosecution.

ures of the patent show the end of the shaft abutting or extending into the cross-sectional body of the retainer plate.

In addition to the Avrea patent described earlier, the district court also made mention of other prior art United States patents cited at trial. Among these, only United States Patent No. 1,647,396 to Decker requires mention. It discloses a rotary tool having a pocket for retaining and storing an associated chuck utilized occasionally to clamp or release the various working bits employed with the tool.

■ The district court found that the Avrea patent was the closest prior art. There can be little doubt that this is correct. What stirs the strongest of objections from Lear, and is essentially the key issue in this appeal, is what the Avrea patent discloses, and in particular whether it teaches or suggests the removability of the spring lockout tool 118 shown in its Figure 2. According to the district court "the disclosure in [the] Avrea Patent meant that removability of the [lockout] tool stem was not itself a matter remaining to be invented at the time of the [Stevenson] patent." The scope and content of the prior art being one of the factual findings, from which a conclusion as to obviousness is drawn, *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966), the correctness of this evaluation by the lower court is to be upheld unless shown to be clearly erroneous. FED.R.CIV.P. 52(a). Thus, although there may appear in the record evidence to the contrary, the finding of the district court will be overturned only if a review of the entirety of the evidence leaves this court with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 956, 220 USPQ 592, 596 (Fed.Cir.1983). A de novo re-

weighing of such a factual finding is simply improper here.[5]

Lear's expert witness, Avrea, testified regarding commercially produced versions of the brake shown in the Avrea patent, for which he was the named inventor. He stated that the retraction shaft in these products was fabricated by cutting threaded stock to an appropriate length and casting one end of the shaft in place in molten aluminum to form a unitary bearing plate/retraction shaft assembly. In addition, a predrilled lateral hole through that portion of the shaft to be encased in the metal of the bearing plate became filled in the casting process by molten aluminum to prevent disassembly of the shaft and plate. Thus, according to witness Avrea, threaded stock was used for the retraction shaft to obtain a stronger connection with the bearing plate, rather than to permit unthreading of the assembly.

Nevertheless, the specification itself of the Avrea patent contains absolutely no teaching of drilling a hole through threaded stem 118 or of casting it in place in the molten metal that is to form bearing plate or spring follower 111. Nor is there any explicit teaching that the connection of the plate and retraction shaft either is, or preferably should be, a permanent attachment. As presented in the Avrea patent specification, a safety lockout comprising stem 118, hub 110 of follower 111, and washer assembly 120, is provided (1) "to move the vehicle from a highway without the long delay required to restore the brakes to proper operating condition following their failure while in service" and (2) "[t]o permit assembly and disassembly as well as servicing of the emergency actuator 34." In the latter regard the specification cautions that "it is important that adequate safeguards be provided in the form of a safety lockout to hold the actuator springs compressed," without elaborating either the nature of the hazards to be combated[6] or the struc-

5. Indeed it is apt wisdom that the most effective strategy on appeal is to have won below, for once this has occurred, at least as to factual issues, the deference to be accorded to the first-

hand factfinder requires more than mere second-guessing to effect an altered result.

6. Avrea, again in the role of expert witness, testified to one such hazard with which he had

tures disclosed in the Avrea patent which afford the desirable "adequate safeguards."

The entire Avrea patent teaching regarding the nature of the connection of these two parts is contained in the following words: "each actuator is equipped with a threaded stem 118 threaded into hub 110 of follower 111." The district court found that the words "threaded into" would have suggested "that the stem could be unthreaded and thus removed." Though some basis exists for disagreeing with this factual finding, it cannot be termed clearly erroneous to reach such a conclusion. Whether the language "threaded into" describes the ultimate assembled relationship of stem 118 and follower 111, a structural matter, or the method of assembling the two is unclear. Nonetheless, if the former is the case, the ability to disassemble the components is not precluded by such wording; if the latter, it is strongly suggested.

Further in support of the conclusion of the district court, the file wrapper of the Avrea patent contains an admission by prosecuting attorney DaRin that, although stem 118 is "illustrated as being threaded into the central portion of the bearing plate, [it] need not be carried in this fashion ... [but] may be carried outside of the emergency braking chamber proper." DaRin commented that the stem could thus be transported in a "tool box" or alternately in a storage pocket on the exterior of the brake casing, as in the then co-pending application, No. 448,558, which matured into the Stevenson patent and for which DaRin was also the prosecuting attorney.[7] Also, witnesses Wearden and Strait testify-

ing for Aeroquip stated that the threaded connection of stem 118 to plate 111 in the drawings of the Avrea patent would have led them to conclude that the connection was not "permanent," but one that was "intended to be removed." Even witness Avrea himself admitted that in common usage, a bolt "threaded into another part" could be taken to mean that the bolt is "screwed into" the part, rather than that the part is "cast around" the bolt.

In any case, we have serious reservations about the propriety of supplementing or clarifying the disclosure aspect of a patent, once it has issued, with pronouncements of its patentee or evidence of the method employed to fabricate commercial devices purportedly embodying its claims. Such information is not intrinsically available to readers of the patent, who are not as a rule expected to take the additional effort of seeking out information about products embodying its disclosed technology. Thus, it cannot be said that the Avrea patent teaches an undisclosed practice of its inventor. Rather, the term "threaded into," though consistent with that practice is also quite reasonably vulnerable to a contrary interpretation, namely, that the stem is removably threaded into the follower.

Under these circumstances we find no merit in Lear's argument that to interpret "threaded into" as teaching the capacity to be threaded out deprives the patentee of his right to define the terms used in his own patent. It is the inventor applying for a patent who is permitted to be his own lexicographer, *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1569, 219 USPQ 1137, 1140 (Fed.Cir.1983);

---

acquired painful personal experience: accidental detachment of the retraction shaft and bearing plate while compressing an emergency spring outside its housing. According to the inventor, one wisdom derived from that experience was to permanently secure the shaft and plate, but this is suggested, if at all, in at best ambiguous terms in his patent disclosure, which concludes its description of the structure and operation of the safety lockout with the admonition that compression of the emergency spring using stem 118 and nut assembly 120 is a "precaution which must be taken before attempting to assemble or disassemble the actuator housing

assembly." No mention is made of any need to have the actuator stem permanently attached to the bearing plate.

7. Although the examiner responding to these remarks made on behalf of the allowability of the Avrea patent was the same primary examiner ultimately named on the Stevenson patent, the significance of this disclosure appears to have not been perceived at the time as presenting problems for the allowability of application No. 448,558. *See* note 4 *supra.*

*General Electric Co. v. United States,* 572 F.2d 745, 751, 215 Ct.Cl. 636, 198 USPQ 65, 70 (1978); *Chicago Foundry Co. v. Burnside Foundry Co.,* 132 F.2d 812, 814–15, 56 USPQ 283, 286 (7th Cir.1943). This is done in order to hold open the possibility of obtaining a patent where an inventor is not schooled in the terminology of the technical art to which his invention pertains or where there is a need to coin new expressions with which to communicate that invention. *See Autogiro Co. of America v. United States,* 384 F.2d 391, 397, 181 Ct.Cl. 55, 155 USPQ 697, 702 (1967). So long as the meaning of an expression is made reasonably clear and its use is consistent within a patent disclosure, an inventor is permitted to define the terms of his claims. *Ellipse Corp. v. Ford Motor Co.,* 452 F.2d 163, 167, 171 USPQ 513, 515 (7th Cir.1971). Nevertheless, the place to do so is in the specification of the inventor's application, and the time to do so is prior to that application acquiring its own independent life as a technical disclosure through its issuance as a United States patent. The litigation-induced pronouncements of inventor Avrea, coming nearly at the end of the term of his patent, have no effect on what the words of that document in fact do convey and have conveyed during its term to the public. Had the permanence of the connection between stem 118 and follower 111 actually been contemplated during preparation of the Avrea patent application, that teaching could have been unequivocally stated as in other prior art patents, such as those to Grogan and to Kateley.

Also, viewed as a make-weight argument is Lear's contention that to read the Avrea patent as teaching the removability of stem 118 is to destroy thereby a significant function of the device as taught, namely, the ability of the brake wear indicator 129 to communicate the condition of the brake linings. This structure and its function were not, we observe, significant enough to warrant claiming in the Avrea patent. Neither is the practitioner in reading the Avrea patent disclosure compelled to adopt every single aspect of its teaching without the exercise of independent judgment. In any case, removability of stem 118 does not destroy the utility of the indicator any more than it destroys the utility of the stem to retract the emergency spring. Removability of stem 118 only renders both functions selective at the discretion of the operator. When the need for one or the other arises, it can be satisfied merely by reinserting stem 118.

### III

■ The findings of the district court on the differences between the prior art and the claims of the Stevenson patent are framed as if the Avrea patent, being the closest reference, were the sole prior art. While in light of the decision below it is understandable that Aeroquip has not objected to this, it is to be noted that such a course is not necessary, as multiple references may be combined to show the obviousness of a claimed invention.

The court found that the Avrea patent disclosed the combination of all the elements recited in claim 1 of the Stevenson patent, except for the "provision of a protective pocket for a major part of the retracting tool." The district court brushed aside this claim limitation as having "no effect on the function of the [brake] unit itself." This is not strictly correct, as the pocket prevents both loss and deterioration of the lockout tool which is an element essential to the functioning of the claimed invention. Nevertheless, a pocket for removable, occasionally utilized tools is hardly novel. Among the art cited by the district court, the patent to Decker discloses such a pocket, albeit for a chuck rather than a spring retracting tool.

Lear objects that no structure on the bearing plate or retraction stem is disclosed in the Avrea patent for rendering the lockout tool selectively removable. This contention has been thoroughly examined in the preceding portion of the opinion and is rejected.

It is also objected that "a removable cap for said housing opening," as recited in

claim 1, "to seal off the interior of the housing when the lockout tool is disengaged" is not taught in the Avrea patent. The district court found this structure to read on plastic cover 122, which does not in the strictest sense comply with the requirements of claim 1, because cover 122, as shown in Figure 2, contains a centrally located aperture through which stem 118 extends and against which the brake wear indicator 129 is read. Thus, with stem 118 removed, cover 122 would not completely "seal off" the interior of the housing. Nevertheless, such a removable cap is clearly suggested by the Avrea patent in combination with prior art patents to Woodward and Kateley which do show removable caps which could effect such a function, though not involving removable retraction stems.

As to the other findings of the district court regarding the differences between claim 1 and the prior art, we find no clear error. Such errors as we have pointed out above can only be termed harmless, as they would not, if corrected, effect a different finding as to invalidity due to obviousness.

Regarding claim 2, the district court noted that the Stevenson patent refers to the bayonet-type connection recited there as "well known in the coupling art." We add that the patent to Douglas shows such a coupling used in the spring compression art. The district court concluded that the only difference between claim 2 and the device taught in the Avrea patent related to the substitution of a "well known" bayonet joint coupling for the threaded coupling of the Avrea patent, in which we observe no clear error.

### IV

Persons having ordinary skill in the art to which the Stevenson patent pertains were found by the district court to be "engineers working in the pneumatic brake field before and during 1963." There has been no serious objection to this finding.

### V

Among its factual findings the district court included what were actually legal conclusions regarding the obviousness to one having ordinary skill in the pertinent art of (1) providing a removable retracting tool, (2) adding a protective and readily accessible pocket to store the tool when not needed, and (3) substituting a bayonet-type for a threaded coupling. Such, we emphasize, are ultimate legal conclusions and accordingly subject to our full review. We find no error in these conclusions, however, when treated as matters of law in the manner touched upon below.

The district court's legal conclusion on obviousness states that the "indicated differences ... between the prior art and the subject matter sought to be patented ... would have been obvious at the time to a person having ordinary skill in the pertinent art." Our only difficulty with that statement is that although *Graham v. John Deere Co.*, 383 U.S. at 17, 86 S.Ct. at 694, 148 USPQ at 467, requires that certain factual inquiries, among them the differences between the prior art and the claimed invention, be conducted to support a determination of the issue of obviousness, the actual determination of that issue requires an evaluation in the light of the findings in those inquiries of the obviousness of *the claimed invention as whole*, not merely the differences between the claimed invention and the prior art. 35 U.S.C. § 103; *Carl Schenck, A.G. v. Nortron Corp.*, 713 F.2d 782, 785, 218 USPQ 698, 700 (Fed.Cir. 1983). The factual inquiries required become, as it were, "background" for a determination of the obviousness or nonobviousness of the claimed subject matter. Refocusing on the obviousness of the whole claimed invention rather than on the obviousness of these differences can render the claims at issue more or less vulnerable to invalidity, based on the circumstances involved.

Here we find that such a refocusing, while required by law, does not effect a different result as to the obviousness of the subject matter recited in the claims at issue. Accordingly, we affirm the district

court in its determination that the Stevenson patent is invalid for obviousness.

Each party is to bear its own costs on appeal.

AFFIRMED.

## Appendix

In the claims below bracked material and paragraphing have been added.

1. In combination with a brake operating booster, means for operating said booster mechanically[,] comprising[:]

[a] a housing attached to the booster,

[b] means therein including an operating connection to said booster to operate the latter upon failure of the normal operating means therefor, said last-mentioned means including[:]

[i] a generally flat, imperforate flexible diaphragm,

[ii] powerful coil spring means having one end seated against the interior wall of said housing and

[iii] a bearing plate floatingly supported against the diaphragm by said spring means, said bearing plate being constructed and defined with temporary holding means for accepting a spring lockout tool when substantially aligned with the axis of the spring and facing toward the housing wall seating said spring end,

said housing having an opening aligned with the axis of said spring and the temporary holding means for the bearing plates,

[c] a spring lockout tool for extending through said opening for engagement with the temporary holding means to allow the lockout tool to be operated for compressing [or] locking out the spring mechanically when the spring is either in a compressed or an expanded condition, [and]

[d] a removable cap for said housing opening to seal off the interior of the housing when the lockout tool is disengaged from the temporary holding means and withdrawn from the housing,

said lockout tool comprising a threaded shank insertable through said housing opening and having one end thereof constructed and defined to detachably interlock with the temporary holding means, said threaded shank having nut means on its other end engageable with the exterior of said housing and cooperating therewith as the nut means is tightened to compress said spring,

said housing [being] provided with a tool storage pocket for receiving and storing the major portion of the lockout tool for protecting same from its environment to thereby maintain the tool in a convenient and readily accessible location in a useable condition when the spring is required to be locked out,

said tool being tightly secured to the pocket to prevent loss of same during operation of the associated vehicle by the nut being tightened to the pocket and released from the pocket by untightening the nut and withdrawing the tool from the pocket.

2. In a combination as defined in claim 1 wherein the detachable interlock for said lockout tool comprises a pin extending transversely of the threaded shank for coaction with said temporary holding means to allow for quick engagement and disengagement with the temporary holding means through rotation of the tool in one direction to cause the pin to be held by said temporary holding means and rotated in the opposite direction to be released therefrom, and wherein said bearing plate has a boss defined substantially centrally thereof having the temporary holding means constructed and defined on the boss to accept the cross pin and hold same upon rotation of the shank to seat the cross pin thereagainst and to release same upon rotation in the opposite direction.