**VOICE TECHNOLOGIES GROUP, INC., Plaintiff–Appellee,**

v.

**VMC SYSTEMS, INC., Defendant– Appellant.**

No. 97–1465.

United States Court of Appeals, Federal Circuit.

Jan. 8, 1999.

Daniel C. Oliverio, Hodgson, Russ, Andrews, Woods & Goodyear, LLP, Buffalo, New York, argued for plaintiff-appellee.

Dennis G. Martin, Blakely, Sokoloff, Taylor & Zafmann, LLP, Los Angeles, California, argued for defendant-appellant.

Before RICH, NEWMAN, and LOURIE, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

VMC Systems, Inc. appeals the decision of the United States District Court for the Western District of New York[1] wherein the court ruled on summary judgment that the VoiceBridge II devices made by Voice Technologies Group do not infringe the claims of VMC's United States Patent No. 5,222,124 (the '124 patent). Because Voice Technologies has not established that it is entitled to judgment of noninfringement, we reverse the grant of summary judgment and remand for further proceedings.

## THE INVENTION

The '124 patent relates to a device that enables communication between a PBX (Private Branch Exchange) system and an adjunct processor. According to the written description, the invention of the '124 patent enables direct communication between a PBX system and an adjunct processor, without the limitations of an intervening telephone; whereas the prior art enabled communication between a PBX system and an adjunct processor through a dedicated, modified telephone set physically connected to an integration device.

Figure 1 of the patent shows PBX system 10 connected through station line card 11 to PBX communications device 20, in turn connected to adjunct processor 30:

1. *Voice Technologies Group, Inc. v. VMC Systems, Inc.*, No. 93–CV–830S (W.D.N.Y. June 5, 1997 (summary judgment) & Feb. 28, 1997 (order construing patent claims)).

# FIG.1

In an embodiment described in the patent, the adjunct processor is a voice mail system. When the PBX system receives an incoming call, the PBX system communicates to the PBX communications device the origin, status, and destination of the incoming call, and the device passes this information to the voice mail system. The voice mail system may connect the caller to the called party's voice mailbox, passing the appropriate data.

Once a message is taken, the voice mail system may direct the PBX to activate a message-waiting indicator on the called party's telephone set.

Figure 2 shows an embodiment of the PBX communications device in greater detail. Line card 11 of a PBX system is connected to the PBX communications device 20 by a lead 12 consisting of two pairs of wires, a data pair 13 and a voice pair 14:

## FIG.2

The text accompanying Figure 2 explains: "The voice pair 14 of the lead 12 is used only for reference ground and power. This is necessary to overcome possible signal level problems. Voice pair 14 is terminated in the power sub-unit of the PBX communications device (transformer 15), which also draws direct power and reference ground from standard AC lines." '124 patent, col. 5, lines 4–9.

## CLAIM CONSTRUCTION

Voice Technologies brought suit against VMC in federal district court asserting various common law torts arising from letters sent by VMC to Voice Technologies' customers charging infringement of the '124 patent. VMC counterclaimed that Voice Technologies' VoiceBridge II devices infringe the '124 patent. Voice Technologies responded with defenses including non-infringement and patent invalidity. Thereafter, Voice Technolo-

gies' complaint was voluntarily dismissed, and the suit proceeded on the patent issues of the counterclaim.

In the course of various pre-trial procedures, including cross-motions for summary judgment, the district court directed the parties to "present arguments and evidence bearing on the claim construction issues." Claim 1 is representative:

1. A telephone communications device for providing communication between a telephone switching apparatus and an adjunct processor, said telephone switching apparatus having at least one telephone switching apparatus station line card connected to said telephone switching apparatus and to said telephone communications device, said telephone communications device comprising:

means for monitoring communications between said telephone switching appara-

tus and said adjunct processor via said station line card;

means for extracting information from said communications, said information comprising status of incoming calls, status of stations in the telephone switching apparatus and the origin, nature, and destination of said incoming calls;

*means for communicating said information from said telephone switching apparatus to said adjunct processor to provide said information in a usable form to the adjunct processor;* and

*means for communicating other information from the adjunct processor to the telephone switching apparatus via said station line card.*

(Emphases added.) The emphasized clauses relate to the disputed claim construction, which concern the means for communicating between the telephone switching apparatus and the adjunct processor.

### 1. Voice Technologies' Position

Voice Technologies argued that it did not infringe the '124 claims because its devices were capable of "telephone emulation" and the specification of the '124 patent disclaimed such devices. Voice Technologies directed the district court's attention to the statement in the '124 specification that the invention does not perform telephone emulation:

> Telephone emulation is the imitation of features and functionality of a particular telephone set. . . .
>
> . . . Since the establishment of a direct talk path is a necessary function of a telephone set, the present invention cannot perform telephone emulation.

Col. 2, lines 51–52 & col. 3, lines 2–4. Voice Technologies asked the court "to rule whether an accused device having the capability of 'direct talk path' does, or does not, 'emulate' a particular telephone set." Voice Technologies stated that integration devices necessarily emulate a telephone and establish a "voice or talk path," and argued that since its devices emulate a telephone, infringement is precluded.

Voice Technologies filed supporting statements of Jacqueline Orr and Robert Fritzinger. Ms. Orr, testifying as an expert, stated that "an integration device *must* emulate a telephone (*i.e.,* must have the 'electrical signature' and functional characteristics of a particular phone)." According to Orr, a "critical component of the 'electrical signature' and functional characteristics of a particular telephone set is the presence of a voice or talk path." Orr stated that "in the absence of a voice or talk path as part of the 'electrical signature' and functional characteristics of a telephone set, the PBX will disable a particular line."

Discussing the '124 patent, Orr stated there is a "negative implication" in the '124 patent specification "indicating the device does not establish a voice or talk path" and that this implication is "incorrect and misleading." She characterized Figure 2 showing the termination of the voice pair as "unclear and ambiguous," and stated that "the only way the invention described in the '124 patent and specification, including the drawings, would successfully operate is if the voice pair 14 was properly terminated at transformer 15 such that the PBX could be satisfied that a voice path has been established." With respect to Voice Technologies' devices, Orr stated that "each of the devices of which I am aware establishes, as it must to be operational, a voice or talk path."

Robert Fritzinger, Voice Technologies' executive vice president and a developer of integration devices, stated that he had reviewed Orr's statements and that he agreed with Orr that " 'telephone emulation' requires the replication of features of a particular telephone set, including the presence or establishment of a talk or voice path." Concerning the '124 patent, Fritzinger stated that "the patentee's definition of 'telephone emulation' is inconsistent and apparently describes a device that is wholly inoperable because it is an absolute requirement of 'telephone emulation' that a voice or talk path be detected as present by the PBX." Regarding Voice Technologies' devices, Fritzinger stated that "[a]s required for 'telephone emulation' to ensure operability and compatibility with a particular PBX and integration system, each of the integration devices at issue in this case produced by [Voice Technologies]

establishes a voice or talk path between the integration device and the PBX."

### 2. VMC's Position

VMC disputed that the claims of the '124 patent are ambiguous or inconsistent, or the described device inoperable. VMC argued that even if the claims were deemed limited to systems that do not perform "telephone emulation," that term as defined in the specification does not exclude the Voice Technologies devices. The specification states:

It is also an object of the present invention to provide the means to connect an adjunct processor to a PBX system without the limitations of telephone emulation. Telephone emulation is the imitation of features and functionality of a particular telephone set.

The present invention, the PBX communications device, connects directly to a PBX station line card of the PBX in much the same manner as any normal peripheral to a PBX system (e.g., answering machine, telephone station set, etc.). It does not emulate any particular telephone set but rather monitors PBX information present on the line card and transmits information from the adjunct processor....

The present invention does not contain, nor utilize, any voice detection circuitry and thus cannot establish a direct talk path with the PBX system. The invention connects with the data pair of the line card only. Since the establishment of a direct talk path is a necessary function of a telephone set, the present invention cannot perform telephone emulation....

The invention does not connect with a physical phone to provide a communications path, and is thus not functionally limited by the features of any particular phone....

In some approaches, it has been possible to provide limited communications with the PBX through telephone emulation or connection with the internal circuitry of a telephone. (See Barnett, et al.). The present invention does not emulate a telephone, but rather connects directly to the data pair of a line card of the PBX. It does not have any of the limitations inherent within telephone emulation, insofar as telephone sets are intended as limited human interfaces to the PBX system.

Col. 2, lines 48–68 & col. 3, lines 1–4, 16–19, 31–39. VMC stated that this description fits the Voice Technologies system, and that the Orr definition of "talk path" and "telephone emulation" is contrary to that of the '124 specification. VMC stated that Orr's definition would render the invention of the '124 patent inoperable; VMC stated that the invention was not only operable, but practiced by Voice Technologies.

VMC submitted the depositions of two Voice Technologies employees, whose testimony supported VMC's position. Laszlo Mezaros, Voice Technologies' president, when asked whether Voice Technologies' Voice-Bridge II device established a direct talk path, stated, "I don't know whether it establishes a direct talk path or not but we don't need talk path to emulate for purposes of integration." VMC pointed out that Mezaros' testimony contradicts Orr's statements that "an integration device *must* emulate a telephone (*i.e.,* must have the 'electrical signature' and functional characteristics of a particular phone)" and that "in the absence of a voice or talk path as part of the 'electrical signature' and functional characteristics of a telephone set, the PBX will disable a particular line." VMC stated that Mezaros uses the same definition of "talk path" as presented in the '124 specification, and that this is the proper definition for use in construing the scope of the claims.

In addition, Steven DeNies, manager of Voice Technologies' Integration Products Group, describing how the VoiceBridge II SL–1 (one of the accused devices) is linked to the PBX, testified: "We do not connect up to the voice path on the SL–1." VMC stated that the DeNies testimony directly contradicts Orr's statement that "each of the [accused] devices of which I am aware establishes, as it must to be operational, a voice or talk path."

VMC also submitted, in connection with the claim construction hearing, the deposition testimony of Harold Oshima, one of the inventors of the '124 patent. Oshima stated

that Orr and Fritzinger employed a different definition of "talk path" from that in the '124 specification. According to Oshima, the specification makes clear that "talk path" refers to the transmission of voice sounds between the PBX and PBX communications device. Oshima also provided a video demonstration of the device in operation. Voice Technologies objected to this evidence, and the district court excluded it from consideration with respect to claim construction, relying on the Federal Circuit's opinion in *Markman* that inventor testimony is not relevant. The district court stated:

> [Voice Technologies] argues that the declaration, the video demonstration, and the transcript are all irrelevant under *Markman*, as a subjective, unreliable, "after the fact" attempt to construe a claim by the inventor. This Court agrees. The declaration does not set forth any qualifications of Mr. Oshima which would allow it to be read as a declaration of an expert or one "skilled in the art."

### 3. District Court's Claim Construction

The district court ruled that the overall invention is controlled by the statement in the specification that "the present invention cannot perform telephone emulation," and thus that no device that performs telephone emulation can infringe the claims. The court held that although the claims do not use the terms "emulation" or "telephone emulation," the claims are "limited to a construction which excludes any device which would operate by means of 'telephone emulation.' "

However, the court ruled that the meaning of "telephone emulation" was unclear as used in the specification. The court held that the term should be defined as it would be understood by a person of skill in the field of the invention, and adopted Orr's definition of "telephone emulation":

> The replication of the electrical and functional characteristics of a specific telephone set by another device, including the "electrical signature," a critical component of which is the presence, as distinguished from the utilization, of a voice or talk path.

The court criticized the evidence submitted by VMC as "add[ing] to the confusion over the issue of voice or talk path."

### 4. The Summary Judgment

The summary judgment motions were re-briefed based on the district court's definition of "telephone emulation" and the construction of the claims to exclude any device that performs telephone emulation.

Voice Technologies argued that its devices establish a "voice or talk path" and perform "telephone emulation" according to the district court's definition, and thus do not infringe the '124 patent. VMC argued that the court's definition of "telephone emulation" is contrary to the specification of the '124 patent, and that on the correct definition the Voice Technologies products do not perform telephone emulation. VMC submitted the declaration of Mario Casteneda, a joint inventor of the '124 patent, and again submitted the declaration of Harold Oshima, the other inventor. The demonstrative video was again offered. The district court included this evidence in the summary judgment record.

The district court applied its definition of "telephone emulation" and found that all of the Voice Technologies devices operated by telephone emulation according to the court's definition. Indeed, VMC agreed that on the court's apparent view of the operation of the '124 invention, there was not infringement. VMC's counsel stated at the argument:

> If the Court believes that a telephone integration device must be electronically connected to the voice or talk path, in the sense in which that term is used in the '124 patent, in order for the "electronic handshake" to be accomplished, the Court should simply grant [Voice Technologies'] motion for summary judgment.

The district court did just that. Having found non-infringement, the court determined the issue of validity to be moot. VMC appeals the summary judgment of non-infringement.

## DISCUSSION

### I

■ Determination of the issue of infringement entails a two step analysis—construction of the claims, a matter of law; followed by application of the claims to the accused device, a question of fact. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) (in banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996). Upon construction of the claims, summary judgment may follow when it is shown that the infringement issue can be reasonably decided only in favor of the movant, when all reasonable factual inferences are drawn in favor of the non-movant. Such judgments usually turn on the claim construction, which requires *de novo* determination on appeal. *See Markman*, 52 F.3d at 979–81, 34 USPQ2d at 1329–31; *see, e.g., EMI Group North America, Inc. v. Intel Corp.*, 157 F.3d 887, 891, 48 USPQ2d 1181, 1184 (Fed.Cir.1998); *Multiform Desiccants Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1476, 45 USPQ2d 1429, 1431 (Fed. Cir.1998).

VMC argues that the claims were incorrectly construed, in that the court misunderstood and over-simplified the discussion in the specification concerning telephone emulation. VMC states that the specification clearly states that the '124 invention does not perform telephone emulation because the system does not contain a direct talk path, *i.e.*, a voice pair or data pair used to carry voice sounds and connected to voice detection circuitry. VMC states that Oshima's declaration explains that Orr excluded the accused devices by using a definition of "direct talk path" contrary to the specification. VMC argues that the specification is clear as to the usage and meaning of "direct talk path," and that when correctly understood, the accused devices are not excluded. VMC states that Voice Technologies did not show, in accordance with the standards of summary judgment, that its VoiceBridge II products do not literally infringe claim 1 of the '124 patent, when claim 1 is correctly construed.

Voice Technologies responds that the district court properly applied the specification's disclaimer of devices capable of telephone emulation, and that since its devices are capable of telephone emulation as defined by the district court, they can not infringe the claims.

### A

■ Claim 1, whose clauses are written in means-plus-function form,[2] covers the structures shown in the specification and equivalents thereof. The usage "means for" signals recourse to the specification for the recited structure, and that the claimed functions may be performed by equivalents of the recited structures. *See, e.g., O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 42 USPQ2d 1777 (Fed. Cir.1997); *Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 41 USPQ2d 1001 (Fed.Cir.1996).

■ The '124 specification describes the circuitry that performs the claimed function of communicating information between the PBX system and the adjunct processor *via the station line card.* The specification states:

> The present invention does not contain, nor utilize, any voice detection circuitry and thus cannot establish a direct talk path with the PBX system. The invention connects with the data pair of the line card only. Since the establishment of a direct talk path is a necessary function of a telephone set, the present invention cannot perform telephone emulation. . . .
>
> \*        \*        \*
>
> The present invention does not emulate a telephone, but rather connects directly to the data pair of a line card of the PBX.

The specification also shows a voice pair extending from the PBX line card to the PBX communications device, Figure 2 and its accompanying text describing an embodiment in which the voice pair wires from the line

2. **35 U.S.C. § 112 & 6**. An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

card are terminated in the transformer of the PBX communications device:

> Voice pair 14 is terminated in the power sub-unit of the PBX communications device (transformer 15), which also draws direct power and reference ground from standard AC lines.

Col. 5, lines 6–9. The specification shows that "connect[ion] with the data pair of the line card only" does not preclude termination of the voice pair in the transformer of the PBX communications device. *See Modine Mfg. Co. v. Int'l Trade Comm'n,* 75 F.3d 1545, 1550, 37 USPQ2d 1609, 1612 (Fed.Cir. 1996) (a claim interpretation that would exclude the preferred embodiment is rarely the correct interpretation).

Thus the structures described in the specification, relevant to the means-for clauses of claim 1 at issue, show the PBX communications device connected to the PBX either through the data pair, or through both the data pair and the voice pair as long as the voice pair terminates in the power sub-unit of the PBX communications device. The essential thread is the absence of a direct talk path, which itself is the basis for the specification's teaching of the absence of telephone emulation.

The '124 specification clearly defines "direct talk path." According to the specification, "direct talk path" refers to a voice pair or data pair used to carry voice sounds and connected to voice detection circuitry. The specification states:

> The present invention *does not contain, nor utilize, any voice detection circuitry* and *thus cannot establish a direct talk path with the PBX system.* The invention connects with the data pair of the line card only. Since the establishment of a direct talk path is a necessary function of a telephone set, the present invention cannot perform telephone emulation. . . .

> \*     \*     \*

Figure 2 is a block diagram of the PBX communications device of the present invention. A PBX station line card 11 of a PBX is connected to the device by a suitable lead 12 consisting of a data pair 13

and voice pair 14, or in the case of a digital station line card, simply a data pair 13 to the PBX communications device 20. *Digital line cards differ from analog line cards in that the voice signal is digitized and passed over a single data pair. The present invention strips away the digitized voice information and processes the PBX data information.*

> \*     \*     \*

> *The voice pair 14 of the lead 12 is used only for reference ground and power.* This is necessary to overcome possible signal level problems. Voice pair 14 is terminated in the power sub-unit of the PBX communications device (transformer 15), which also draws direct power and reference ground from standard AC lines.

Col. 2, lines 66–68; col. 4, lines 52–61; col. 5, lines 4–9 (emphases added). Voice detection circuitry is essential to a direct talk path, and both are necessary conditions for telephone emulation. The '124 invention can not perform telephone emulation because neither the voice pair nor the data pair is connected to any voice detection circuitry; the communications device terminates the voice pair in a power sub-unit and strips away any digitized voice information from the data pair. Regardless of whether the line card is analog or digital, the communications device connected to that line card connects neither the voice pair nor the data pair to voice detection circuitry, and therefore uses neither the voice pair nor the data pair to carry voice sounds.

Thus the communications device does not establish a direct talk path and is not capable of telephone emulation. Indeed, because a direct talk path carries voice sounds, it is one of the features and functionality of a telephone set required for telephone emulation, as stated in (and defined in) the specification. *See* Col. 2, lines 51–52 ("Telephone emulation is the imitation of features and functionality of a particular telephone set.")

■ Therefore, the specification clearly defines "direct talk path" as a voice pair or data pair used to carry voice sounds and connected to voice detection circuitry. When

the meaning of a term as used in a patent is clear, that is the meaning that must be applied in the construction of the claim and in the infringement analysis. *Multiform,* 133 F.3d at 1477, 45 USPQ2d at 1432; *Lear Siegler, Inc. v. Aeroquip Corp.,* 733 F.2d 881, 889, 221 USPQ 1025, 1031 (Fed.Cir.1984).

**B**

■ The district court ruled that the '124 patent did not clearly define "telephone emulation," and adopted the Orr definition:

The replication of the electrical and functional characteristics of a specific telephone set by another device, including the "electrical signature," a critical component of which is the presence, as distinguished from the utilization, of a voice or talk path.

We agree with VMC that this definition and the underlying definition of "voice or talk path" are contrary to the specification. The distinctions are critical to the outcome of this case.

Oshima explains in his declaration that the term "talk path" in the specification refers to the transmission of voice sounds:

12. Although it is not essential that the talk-path be in analog form, that is a typical mode with PBX systems. Newer models actually are on the market that replace the analog voice path system with digital communications, that is, electrical impulses translatable into binary code, i.e., ones and zeroes. Whether the PBX transmits voice in analog form or translates it into digital form, it is the transmission of the sounds—including the human voice—in a telephone call that we refer to in the patent as the talk path. We say this clearly in column 2, line 66 of the '124 patent:

The present invention does not contain, nor utilize any voice detection circuitry and thus cannot establish a direct talk path with the PBX system. The present invention connects with the data pair of the line card only. Since the establishment of a direct talk path is a necessary function of a telephone set, the present invention cannot perform telephone emulation.

Oshima explains that Orr's affirmations are correct only if "voice or talk path" is defined as voice pair wires supplying electrical power to a telephone set device or PBX communications device, in a situation where the device otherwise would not receive power:

22. Where Orr and Fritzinger confuse the issue is in using the term "voice pair" as a synonym for "talk path," contrary to the above-quoted portion of the specification, and contrary to the way the term "voice path" or "talk path" is commonly used in the industry, in my ten years experience in it. The way in which they use the term talk path apparently includes the use of the voice path as a source of electric power, not as a path for voices. Thus, Orr says that the "accepted definition of 'telephone emulation' in the art, requires the presence of a voice or talk path, *whether utilized or otherwise* ..." (emphasis added). She therefore concedes that the talk path does not have to be used in order to complete the "handshake."

\* \* \*

26. The definition that Orr draws for telephone emulation from the erroneous definition of voice path, is also necessarily wrong, in the sense that it is inconsistent with what the patent actually says. To paraphrase Orr, she is correct from a technical standpoint, if [sic] when she says that the VMC device will not work without connection to the voice path, *only* if what she means is "the VMC device won't work unless it is attached to a power source." She is right that the device will not work without power; she is wrong if she uses the correct definition of voice path as it is defined in the patent specification.

(Citations omitted.) Oshima states that Orr misleadingly implies, and conspicuously avoids stating, that the "electronic signature" confirmation or "handshaking" required for operability is accomplished over the voice pair. Oshima states, and the specification requires, that the required handshaking between the PBX and the communications device takes place exclusively over the data pair:

19.... There are no polling messages or handshaking messages sent over the voice pair.

\*    \*    \*

23. On careful reading of the Orr Affirmation, she does not say ·that the "handshake" is *accomplished* over the voice pair. In fact, it is not necessary to complete the handshake over the voice pair at all, in our device. As Figure 4 shows, and as the videocassette demonstration shows, the handshake is completed entirely digitally, over the data pair, and there is no need for the voice pair to be connected to anything, if a separate power source is available. To anyone familiar with the operation of telephones, what Ms. Orr is saying ultimately is nothing more than that the system will not work if it is not plugged in. It is obvious to anyone with skill in the art that the best mode diagram and the accompanying text (column 5, lines 4–5) show the voice pair "is used only for reference ground and power."

*See also* Col. 6, lines 40–42 ("Polling messages can take many forms, but is normally a predefined data packet addressing a specific device or component.")

Thus Oshima explains that Orr's affirmations merely state that the handshaking between the PBX and the attached device can not take place if the attached device, whether it be a telephone set or a PBX communications device, does not receive power. In the case of a telephone set, the voice pair typically supplies power. If the voice pair is severed, the telephone set will not handshake— not because there is no voice pair, but because there is no power. On the other hand, in one embodiment of the '124 patent, the voice pair is used for reference ground and power, terminating in a transformer that draws direct power and reference ground from standard AC power lines, *i.e.*, a standard wall outlet. Even if the voice pair is severed, the PBX communications device will continue to handshake and to operate, because the transformer continues to supply power to the PBX communications device. The demonstrative video shows such an embodiment of the '124 patent. The PBX com-

munications device performs various operations, notwithstanding that the voice pair from the line card hangs in space.

Thus Oshima states that Orr merely affirms that neither a telephone set device nor a communications device is capable of handshaking when power is not supplied to the device. According to Oshima, Orr's analysis is premised on a definition of "direct talk path" contrary to the '124 specification.

▮ The declaration of Oshima exposes ambiguities in the Orr and Fritzinger analyses, and their distortion of the '124 invention. We express concern that this court's *Markman* decision may have led the district court to exclude the Oshima declaration and video demonstration during claim construction. Although in *Markman* this court stated that "the subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim," this statement does not disqualify the inventor as a witness, or overrule the large body of precedent that recognizes the value of the inventor's testimony. *See Hoechst Celanese Corp. v. BP Chemicals Ltd.,* 78 F.3d 1575, 1580, 38 USPQ2d 1126, 1130 (Fed.Cir.1996) (inventor's testimony considered as "enlarging [Federal Circuit's] understanding of the technology and the usage of the disputed terms"). This court in *Markman* did not hold that the inventor can not explain the technology and what was invented and claimed; the Federal Circuit held only that the inventor can not by later testimony change the invention and the claims from their meaning at the time the patent was drafted and granted.

Patents are written not for laymen, but for and by persons experienced in the field of the invention. An inventor is a competent witness to explain the invention and what was intended to be conveyed by the specification and covered by the claims. The testimony of the inventor may also provide background information, including explanation of the problems that existed at the time the invention was made and the inventor's solution to these problems. *See, e.g., Hoechst Celanese,* 78 F.3d at 1580, 38 USPQ2d at 1130. Although *Markman* and other prece-

dent caution the court against creative reconstruction of an invention by interested persons, courts are not novices in receiving and weighing expertise on both sides of an issue. The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) instructed trial judges to exclude scientifically unqualified witnesses, not those with superior qualifications.

The district court's definitions of "telephone emulation" and "direct talk path" are contrary to the clear meanings provided in the '124 specification and therefore must be rejected. *See Multiform,* 133 F.3d at 1477, 45 USPQ2d at 1432; *Lear Siegler,* 733 F.2d at 889, 221 USPQ at 1031. Although Voice Technologies' expert witness Orr characterized Figure 2 as "ambiguous" and "unclear," stating that "the only way the invention described in the specification, including the drawings, would successfully operate is if the voice pair 14 was properly terminated at transformer 15 such that the PBX could be satisfied that a voice path has been established" this statement contradicts the statements in the '124 patent that the invention does not establish a "direct talk path." Orr's definitions, resulting in a specification that describes an inoperable invention, were not supported by any evidence and were impugned by the videotape showing the invention in operation. Orr's definitions were also contradicted by Voice Technologies' own employees.

We conclude that it is not necessary to establish a voice or talk path in order for the '124 invention to operate as described in the specification. Although the absence of a direct talk path comports with the absence of telephone emulation, and is the correct criterion for construction of the claims, the district court did not properly define "direct talk path." A "direct talk path" requires a voice pair or a data pair used to carry voice sounds and connected to voice detection circuitry, and "telephone emulation" is impossible without "direct talk path."

## II

The proper inquiry concerns whether Voice Technologies' devices contain a direct talk path. That is, could a reasonable juror have found, as VMC asserts, that neither the voice pair nor the data pair in Voice Technologies' devices carries voice sounds and connects to voice detection circuitry. If so, summary judgment of non-infringement was improper.

The summary judgment record does not show that the accused VoiceBridge II products contain a voice or data pair used to carry voice sounds and connected to voice detection circuitry. The district court made no findings as to any devices. If the voice pair or data pair in fact carries voice sounds and connects to voice detection circuitry, then claim 1 is not infringed; the other claims were not discussed in the record. The factual issues of infringement require further development, on the correct claim construction. The grant of summary judgment of non-infringement was in error, and is reversed. We remand to the district court for further proceedings.

Costs to VMC.

*REVERSED AND REMANDED.*