**MULTIFORM DESICCANTS, INC.,**
**Plaintiff-Cross Appellant,**

v.

**MEDZAM, LTD., Defendant-Appellant.**

**Nos. 96–1255, 96–1274.**

United States Court of Appeals,
Federal Circuit.

Jan. 15, 1998.

Michael R. McGee, McGee & Gelman, Buffalo, NY, argued for plaintiff-cross appellant.

Jeremiah J. McCarthy, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, argued for defendant-appellant.

Before NEWMAN, CLEVENGER, and SCHALL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

In this patent suit, the United States District Court for the Western District of New York[1] held that United States Patent No. 4,853,266, entitled "Liquid Absorbing and Immobilizing Packet Containing a Material for Treating the Absorbed Liquid" (the '266 patent), owned by Multiform Desiccants, Inc., was not infringed by the similar product sold by Medzam, Ltd. The district court entered judgment in favor of Medzam, did not decide the issue of patent validity, and denied Medzam's request for attorney fees. Multiform appeals the judgment of non-infringement, and Medzam appeals the denial of attorney fees and the decision not to reach the issue of validity.

## THE TECHNOLOGY

The invention described and claimed in the '266 patent is a packet for use in controlling spilled liquids. In typical use the packet is placed in an outer shipping container that encloses an inner container holding a hazardous liquid such as medical waste or body fluids. Should the inner container break or leak, the released liquid encounters the packet in the outer container. The packet envelope, which is made of a soluble material, disintegrates and releases materials that absorb, immobilize, and treat the spilled liquid. The absorbing and immobilizing material is preferably sodium polyacrylate, a known absorbent that expands and gels on contact with liquid. The treating material may be a known disinfectant, scent, deodorizer, etc., depending on the intended use of the packet.

Medzam's accused packet, called the Red-Z Zafety Pac, is designed and sold for the same uses as the Multiform packet. The Medzam envelope is made of porous material such as is used for tea bags, and contains the

1. *Multiform Desiccants, Inc. v. Medzam, Ltd.,* No. 91–CV–0095E(H), 1995 WL 737929 (W.D.N.Y. Dec. 7, 1995).

known absorbing and immobilizing material potassium polyacrylate and a disinfectant. When spilled liquid penetrates the porous envelope, the polyacrylate inside the envelope starts to absorb and expand. The expanding absorbent splits open the envelope, releasing its contents for further absorption.

## LITERAL INFRINGEMENT

Patent infringement occurs when a device (or composition or method), that is literally covered by the claims or is equivalent to the claimed subject matter, is made, used, or sold, without the authorization of the patent holder, during the term of the patent. *See* 35 U.S.C. § 271. The claims are concise statements of the subject matter for which the statutory right to exclude is secured by the grant of the patent. Since a full and complete understanding of the scope of the claims is requisite to determining whether the patent is infringed, technical terms or words of art or special usages in the claims, if in dispute, are construed or clarified by the court before the construed claims are applied to the accused device. On appellate review the Federal Circuit again construes the claims, determining *de novo* the correct construction. *See Markman v. Westview Instruments*, 52 F.3d 967, 979–81, 34 USPQ2d 1321, 1329–31 (Fed.Cir.1995) (*en banc*), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996).

On occasion the issue of literal infringement may be resolved with the step of claim construction, for upon correct claim construction it may be apparent whether the accused device is within the claims. *See, e.g., Strattec Security Corp. v. Gen. Automotive Specialty,* 126 F.3d 1411, 1419, 44 USPQ2d 1030, 1036 (Fed.Cir.1997); *Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.,* 98 F.3d 1563, 1572, 40 USPQ2d 1481, 1488 (Fed.Cir.1996). The district court so viewed this case. Although the cause was fully tried to a jury, after trial the judge dismissed the jury without requesting a verdict, citing the Federal Circuit's decision in *Markman* and stating that "This question is one of claim construction, a question of law."

### *Claims 1 and 6*

In the '266 patent the packet is claimed as a combination of the degradable envelope, the absorbing material, and the treating material. A second group of claims describes the envelope in terms of its function, in the form authorized by 35 U.S.C. § 112 ¶ 6; these claims are discussed *post.* Claims 1 and 6 are representative of the first group of claims:

1. A packet for absorbing and immobilizing a liquid comprising *an envelope which is degradable* in said liquid, a first material in said envelope for absorbing and immobilizing said liquid, and a second material confined in said envelope for additionally treating said liquid which is absorbed and immobilized to nullify a specific undesirable quality thereof.

6. In an outer container having an inner container with liquid from which said liquid can leak, an absorbent packet located between said inner and outer containers for absorbing and immobilizing said liquid within said outer container in the event of leakage of said liquid from said inner container comprising *an envelope which is degradable* in said liquid, a first material in said envelope for absorbing and immobilizing said liquid, and a second material confined in said envelope for additionally treating said liquid which is absorbed and immobilized to nullify a specific undesirable quality thereof.

(Emphases added.) Medzam conceded that its packet contains all of the elements of claims 1 and 6 except the "degradable" envelope. Medzam argued that its envelope is not degradable, when that term is correctly construed, and thus that the claims are not infringed.

The disputed issue is the meaning of the term "degradable" in characterizing the claimed envelope. The district court defined this term with an eye to the accused envelope. The court held that the terms "degrade" and "degradable," as used in the '266 patent, mean that the envelope at least partially dissolves and thereby disintegrates in the liquid. The court held that this meaning of "degradable" does not include the mode of operation of the Medzam packet, wherein the envelope bursts open by expansion of the contents but the envelope itself does not dissolve and disintegrate by direct action of the liquid.

Multiform states that this claim construction is incorrect, and that upon correct construction a finding of infringement is inevitable. Multiform argues that "degradable" must first be construed based on the '266 patent documents, without reference to the accused device, see *Jurgens v. McKasy*, 927 F.2d 1552, 1560, 18 USPQ2d 1031, 1037 (Fed. Cir.1991) ("claim is construed without regard to the accused product"); *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1580, 18 USPQ2d 1001, 1013 (Fed.Cir. 1991) (the words of the claims are independently construed, focussing on the disputed elements), and that as used in the '266 patent "degradable" is not limited to dissolution and disintegration, but means any loss in the containment function of the envelope. Multiform cites dictionaries showing this broader meaning, and states that a person of ordinary skill would construe "degradable," as applied to these envelopes, as meaning a loss in their containment function.

It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed. Such person is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field. The inventor's words that are used to describe the invention—the inventor's lexicography—must be understood and interpreted by the court as they would be understood and interpreted by a person in that field of technology. Thus the court starts the decisionmaking process by reviewing the same resources as would that person, *viz.*, the patent specification and the prosecution history. These documents have legal as well as technological content, for they show not only the framework of the invention as viewed by the inventor, but also the issues of patentability as viewed by the patent examiner.

During patent prosecution Multiform submitted dictionary definitions of "degradable" from *Webster's New Collegiate Dictionary* (1976), explaining the submission as follows:

The word "degrade" includes the definitions of "to deprive of standing or true function" and "to impair in respect of some physical property." Thus when the envelope is dry and not degraded, its true function is to contain its contents. However, once it is exposed to liquid, it is deprived of its standing or true function and it has its physical property of containing its contents impaired.

Multiform states that this definition is comprehensive of the degradation of the Medzam envelope that bursts apart and thus loses its true function, and is not limited to an envelope that degrades by dissolving. Multiform states that it is not necessary for the packet to disintegrate in order to degrade. Medzam responds that Multiform offered these definitions only after Multiform became aware of the Medzam packet, and that the definitions are at odds with the plain reading of the specification.

Multiform argues that, in keeping with the rule that an inventor may be his own lexicographer, its definition of "degradable" must prevail. When the meaning of a term is sufficiently clear in the patent specification, that meaning shall apply. See *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388, 21 USPQ2d 1383, 1387 (Fed.Cir. 1992); *Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 889, 221 USPQ 1025, 1031 (Fed.Cir.1984). This rule of construction recognizes that the inventor may have imparted a special meaning to a term in order to convey a character or property or nuance relevant to the particular invention. Such special meaning, however, must be sufficiently clear in the specification that any departure from common usage would be so understood by a person of experience in the field of the invention.

Thus we review, *de novo*, the meaning of "degradable" in claims 1 and 6. We start with the specification. See *Slimfold Mfg. Co. v. Kinkead Industries, Inc.*, 810 F.2d 1113, 1116, 1 USPQ2d 1563, 1566 (Fed.Cir.1987) ("Claims are not interpreted in a vacuum, but are part of and are read in light of the specification.") The '266 specification describes the Multiform envelope as made of soluble starch, such that "when the aqueous solution comes into contact with the envelope, it degrades it ...." '266 patent, col. 1, lines 21–23. The specification explains that degradation of the envelope results from dissolution of the soluble envelope material. The specification illustrates an envelope

whose inner layer contains a dot matrix pattern of insoluble material that permits heat-sealing, and in discussing this pattern the specification explains that it is the soluble portion that results in degradation of the envelope: "The dot matrix pattern, or any other suitable discontinuous pattern, permits liquid, which may not otherwise be able to dissolve the material of coating 17, to completely degrade envelope 11 because there are uncoated spaces 18 between the dots of the coating 17 through which liquid can pass." '266 patent, col. 3, lines 5–10. The district court discussed the specification in reaching its conclusion, and also reviewed the prosecution history. The court referred to United States Patent No. 4,124,116 to McCabe, which describes a water-soluble envelope that releases its contents upon contact with spilled aqueous liquid. The McCabe envelope is made of two sheets, one of which is made of soluble starch. The district court observed that "Multiform distinguished this invention to the PTO, not by asserting a distinction between degrade and dissolve, but by noting that the '266 Patent included a second material for treating the absorbed liquid." 1995 WL 737929 at *11. We agree that this analysis is correct.

The district court concluded that the specification and the prosecution history do not support a meaning of "degradable" that would include an envelope that bursts open from inner pressure without any dissolution. The district court defined "degradable" in light of the mode of action of the accused device, a pragmatic expedient relevant to the issue in litigation. Thus the court held that Multiform's dictionary definitions added during patent prosecution, although stating a broad definition of "degradable," could not serve to enlarge the scope of the claims in order to cover the Medzam device. The district court did not accept Multiform's position that the dictionary definitions provided during the prosecution simply clarified the inventor's original usage of "degradable." We agree with this analysis.

Courts must exercise caution lest dictionary definitions, usually the least controver-sial source of extrinsic evidence, be converted into technical terms of art having legal, not linguistic, significance. The best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history. The evolution of restrictions in the claims, in the course of examination in the PTO, reveals how those closest to the patenting process—the inventor and the patent examiner—viewed the subject matter. *See Hoechst Celanese Corp. v. BP Chemicals Ltd.,* 78 F.3d 1575, 1578, 38 USPQ2d 1126, 1129 (Fed.Cir. 1996) ("A technical term used in a patent document is interpreted as having the meaning that it would be given by persons experienced in the field of the invention, unless it is apparent from the patent and the prosecution history that the inventor used the term with a different meaning.") When the specification explains and defines a term used in the claims, without ambiguity or incompleteness, there is no need to search further for the meaning of the term.

We conclude that the meaning of "degradable" in claims 1 and 6 (and the claims dependent thereon) is limited to the dissolution/degradation of the envelope as described in the specification. The court correctly excluded the meaning whereby the envelope "degrades" by bursting instead of dissolving, and correctly held that "degradable" means that there must be at least partial dissolution of the envelope. Upon this claim interpretation, the district court concluded that there could not be literal infringement of claims 1 and 6. We agree, for this claim interpretation eliminated the Medzam envelope, which bursts but does not dissolve, from the literal meaning and scope of the claims.

### Claims 11 to 15

■ During pendency of the '266 application claims 11–18 were added to describe the envelope in terms of its function, in accordance with the form authorized by 35 U.S.C. § 112 ¶ 6.[2] Claims 11–15, asserted against the Medzam packet, do not contain the word "degradable." Claim 11 is representative:

---

**2.** § 112 ¶ 6. An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support there-of, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

11. A packet for absorbing and immobilizing a liquid comprising a first material which will absorb and immobilize said liquid, a second material for additionally treating said liquid which is absorbed and immobilized to nullify a specific undesirable quality of said liquid, and *means for containing said first and second materials while said means are dry and for releasing said first and second materials on contact of said means with said liquid* to thereby permit said first and second materials to absorb and immobilize and treat said liquid.

(Emphasis added.) In adding these "means-for" claims Multiform's attorney wrote to the patent examiner that the word "degradable" was ambiguous in that it could be interpreted "as synonymous with 'disintegrate,' which is not necessary for the packet to function properly." The attorney submitted the dictionary definitions that we discussed in connection with claims 1 and 6. Multiform argues that the grant of claims 11–15 makes clear that neither the applicant nor the examiner viewed the invention as limited to a dissolving, disintegrating envelope.

■ A claim containing a functional limitation written in means-for form is literally infringed when the accused device performs the function stated in the claim, by means of structure, material, or acts described in the specification or equivalents thereof. *See Texas Instruments, Inc. v. United States Int'l Trade Comm'n,* 805 F.2d 1558, 1562, 231 USPQ 833, 834–35 (Fed.Cir.1986) (equivalency of structure, materials, or acts with respect to the claimed function is a matter of literal infringement). Thus § 112 ¶ 6 facilitates the mechanics of claiming, by permitting the use of functional terms in claims while incorporating, from the specification, the breadth as well as the details of how the function is performed. However, claims written in the means-for form of § 112 ¶ 6 do not, by virtue of this form, acquire a scope as to the function beyond that which is supported in the specification, or as to the structure beyond equivalents of that shown in the specification.

■ In determining whether there is literal infringement under § 112 ¶ 6, the first step in interpretation of the claim is determination of the meaning of the words used to describe the claimed function, if such meaning is in dispute. This claim interpretation is deemed to be a matter of law, and is reviewed *de novo* on appeal. *Markman,* 52 F.3d at 979–81, 34 USPQ2d at 1329–31. Medzam conceded that all of the elements of claim 11 are present in its device, except for the element now claimed in terms of its function of containing and releasing the absorbing and treating materials.

The district court found that the function of containing and releasing the contents of the packet does not embrace all envelopes whose contents are released on contact with liquid. The court stressed the description of the envelope in the '266 specification as made of "degradable starch paper," "degradable in water and other liquids," "able to dissolve," and "practically entirely disintegrated," in finding that the function of releasing the envelope contents must be performed by an envelope that disintegrates by dissolution. The court then found that since the Medzam envelope does not dissolve, it does not perform the function required by claims 11–15.

■ Multiform argues that the function of containing and releasing the contents of the envelope is plainly performed by the Medzam envelope, and that even if the Medzam envelope's structure and material are not the same as described in the '266 specification, they are equivalent means of performing the same function. The district court found that the structure and material of Medzam's porous envelope, which works by penetration of the liquid through the envelope fabric, are not equivalent to the starch paper described in the '266 specification, which dissolves and disintegrates. The district court's finding of non-infringement is reviewed for clear error. *Biodex Corp. v. Loredan Biomedical, Inc.,* 946 F.2d 850, 852, 20 USPQ2d 1252, 1254 (Fed.Cir.1991); *Durango Associates, Inc. v. Reflange, Inc.,* 843 F.2d 1349, 1357, 6 USPQ2d 1290, 1295 (Fed. Cir.1988).

■ Multiform invokes the doctrine of claim differentiation, which presumes that there is a difference in scope among the claims of a patent. *Tandon Corp. v. United States Int'l Trade Comm'n,* 831 F.2d 1017, 1023, 4 USPQ2d 1283, 1288 (Fed.Cir.1987);

*Autogiro Co. of America v. United States,* 181 Ct.Cl. 55, 384 F.2d 391, 404, 155 USPQ 697, 708 (1967). Multiform states that this doctrine requires that claims 11–15 be viewed separately from claims 1 and 6, and that a broader interpretation is warranted because claims 11–15 are not limited to a degradable envelope, but are directed primarily to the function of containing and releasing the contents. However, the doctrine of claim differentiation can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence. As explained in *Tandon,* 831 F. 2d at 1023, 4 USPQ2d at 1288, claims that are written in different words may ultimately cover substantially the same subject matter. *See also Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1269, 229 USPQ 805, 810 (Fed.Cir. 1986) (affirming district court's construction of a claim although it rendered a dependent claim redundant). We affirm the district court's ruling that the functions stated in claims 11–15, as performed by the structure and materials shown in the '266 specification and equivalents thereof, are not literally met in the Medzam envelope.

## DOCTRINE OF EQUIVALENTS

■ Multiform argues that even on the district court's interpretation of the claims, the Medzam packet infringes under the doctrine of equivalents. The doctrine of equivalents, of common law origin, serves to prevent a "fraud on the patent." *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950). Thus the doctrine of equivalents balances the purpose of fairness to inventors lest the patent be unjustly circumvented, against the purpose of patent claims to state clear boundaries of the patent grant, in fair notice of its scope. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* —— U.S. ——, ——, 117 S.Ct. 1040, 1051, 137 L.Ed.2d 146, 41 USPQ2d 1865, 1873 (1997).

Applying *Graver Tank* and *Warner–Jenkinson,* we review whether the Medzam porous envelope performs substantially the same function as that of the dissolving envelope of the '266 patent and, if so, whether it is performed in substantially the same way to achieve substantially the same result. *Graver Tank,* 339 U.S. at 608, 70 S.Ct. at 856, 85 USPQ at 330. We also apply the requirement that all of the claim elements or functions must be present in the accused device, literally or by an equivalent element or function. *Warner–Jenkinson,* —— U.S. at ——, 117 S.Ct. at 1054, 41 USPQ2d at 1875.

■ Determination of infringement under the doctrine of equivalents occurs after the claims have been construed as a matter of law. The trier of fact, applying the claims as construed, finds whether the accused device, element by element, is equivalent to that which has been patented. The court also determines whether there is any estoppel derived from the prosecution history that bars remedy even when there is technologic equivalency, for the patentee is precluded from reaching, under the doctrine of equivalents, subject matter that was disclaimed in order to obtain the patent.

The district court found that the Medzam envelope performs the function of releasing its contents in a substantially different way than does the envelope of the '266 patent, in that the Medzam envelope is not soluble in and does not degrade in the liquid. Although Multiform argues that the Medzam packet functions in a way that is "consistent" with the '266 invention, for the Medzam porous envelope releases its contents upon contact with liquid, the district court found a porous envelope that bursts with inner pressure to be substantially different from a degradable envelope that dissolves. This finding has not been shown to be clearly erroneous.

■ Multiform argues that the interchangeability of the envelopes weighs heavily on the side of equivalency. Interchangeability is a significant factor in determination of equivalency. In *Warner–Jenkinson,* —— U.S. at —— – ——, 117 S.Ct. at 1052–53, 41 USPQ2d at 1874, the Court explained that interchangeability need not be known at the time the patent application was filed, and that substitution of a later-developed element does not insulate the combination from a finding of equivalency. *See Atlas Powder Co. v. E.I. du Pont De Nemours & Co.,* 750 F.2d 1569, 1581, 224 USPQ 409, 417 (Fed.Cir.

1984) (separately patentable element did not avoid equivalency). However, the district court found that "the Red–Z Zafety Pac envelope would not be known as interchangeable with a degradable envelope by one reasonably skilled in the art." 1995 WL 737929 at *13. The modes of dissolving and bursting are not clearly interchangeable, and we do not discern clear error in the district court's finding that they were not interchangeable.

The district court's finding of non-infringement under the doctrine of equivalents is not clearly erroneous, and must be affirmed.

## VALIDITY

■ After the trial Medzam withdrew its antitrust, unfair competition, unfair trade practice, and tort-based counterclaims; no counterclaims remained. Although Medzam continued to assert patent invalidity as an affirmative defense to infringement, the district court stated, upon finding non-infringement, that it "need not reach the issue of whether Medzam has overcome the presumption of validity regarding the '266 Patent." 1995 WL 737929 at *14. The district court recognized that it could, in its discretion, decide this affirmative defense, but chose not to do so, citing Fed.R.Civ.P. 8(c). Medzam objects to this exercise of judicial restraint, arguing that the validity issue was fully litigated and that it is entitled to a decision, referring in its brief to its "request for a declaration of invalidity or unenforceability."

Although viewed by Medzam as a mere technicality, it is dispositive that Medzam did not file a counterclaim for a declaration of invalidity. The Supreme Court in *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1, 26 USPQ2d 1721 (1993) drew a dispositive distinction between an affirmative defense and a counterclaim for a declaratory judgment. The Court stated: "An unnecessary ruling on an affirmative defense is not the same as the necessary resolution of a counterclaim for a declaratory judgment." *Cardinal Chemical*, 508 U.S. at 93–94, 113 S.Ct. at 1973, 26 USPQ2d at 1726. A request for a ruling of invalidity, for example as in Medzam's motion for judgment as a matter of law filed after close of the plaintiff's case, does not convert the defense into a counterclaim; nor does the filing of a trial brief, nor the filing of proposed findings and conclusions on the issue of validity.

In *Cardinal Chemical* the Court held that the Federal Circuit, when reviewing infringement on appeal, should also review the issue of validity when that issue was raised by counterclaim or declaratory judgment and was decided by the trial court, as a matter of serving the public interest in valid patents. However, the Court suggested that appellate review was unnecessary when the issue of validity was raised only as an affirmative defense. 508 U.S. at 93–94, 113 S.Ct. at 1973–74, 26 USPQ2d at 1726. The Court did not discuss whether there should be an obligation on the trial court to decide the issue of validity, when the dispute has been finally disposed of on other grounds. We decline to require the trial court now to decide patent validity, after the controversy has been resolved.

Thus we decline Medzam's request for further proceedings on the issue of validity, even as we stress the useful general rule that trial courts should decide all litigated issues, in the interest of finality. *See Sinclair & Carroll Co. v. Interchemical Corp.*, 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644, 65 USPQ 297, 299 (1945) (suggesting that it is usually the better practice for the district court to decide validity); *accord Cardinal Chemical*, 508 U.S. at 100, 113 S.Ct. at 1976–77, 26 USPQ2d at 1729 (citing *Sinclair & Carroll* with approval). We take note that if the Federal Circuit had reversed the judgment of non-infringement, the issue of validity would have required remand and decision, perhaps followed by another appeal, and accompanying cost, delay, and inefficiency. However, as this litigation has evolved, Medzam has no justiciable interest in validity. The case is over.

## ATTORNEY FEES

■ The district court's denial of attorney fees under 35 U.S.C. § 285 is subject to reversal only if (1) the finding that this is not an exceptional case is clearly erroneous and (2) the ensuing refusal of attorney fees is an abuse of discretion.

■ Findings of exceptional case have been based on a variety of factors; for ex-

ample, willful or intentional infringement, inequitable conduct before the Patent and Trademark Office, vexatious or unjustified litigation, or other misfeasant behavior. *See Rite–Hite Corp. v. Kelley Co., Inc.*, 819 F.2d 1120, 1126, 2 USPQ2d 1915, 1919 (Fed.Cir. 1987). Medzam offers three reasons why this case should be deemed exceptional. First, Medzam states that Multiform engaged in bad faith litigation because Multiform "admitted" that Medzam's product did not have a "degradable" envelope. Multiform responds that it always had the good faith belief that Medzam's product was "degradable" in terms of the '266 patent. We agree that Medzam mischaracterizes Multiform's "admission," and that bad faith can not be founded on this issue.

█ Medzam also argues that it was an act of bad faith for Multiform to add the "means-for" claims to the '266 patent in an attempt to cover Medzam's product. However, it is neither illegal nor bad faith for an applicant to amend the claims in view of a competitor's product. *See Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874, 9 USPQ2d 1384, 1390 (Fed. Cir.1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989) ("[N]or is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application."); *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1235, 224 USPQ 418, 424 (Fed.Cir.1985).

Medzam also states that Multiform committed inequitable conduct by presenting the patent examiner with misleading dictionary definitions during the prosecution of the '266 patent. Medzam states that Multiform cited the dictionary definition of "degrade," while failing to cite the dictionary definition of "degradable," which Medzam says is inconsistent with "degrade." Medzam states that intent to deceive can be inferred from this action. Although direct evidence of fraudulent intent is not easy to come by, inference without any probative evidence is insufficient to show culpable intent. As discussed in *Kingsdown*, the charge of inequitable conduct before the patent office had come to be attached to every patent prosecution, diverting the court from genuine issues and simply spawning satellite litigation. *See Kingsdown*, 863 F.2d at 876, 9 USPQ2d at 1391; *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422, 7 USPQ2d 1158, 1161 (Fed. Cir.1988) (the charge of inequitable conduct in every major patent case "has become an absolute plague"). Medzam has not shown that the dictionary definitions were incorrect or misleading or that the examiner was misled.

The district court correctly held that "Medzam has not shown by clear and convincing evidence that Multiform's conduct before the PTO was inequitable." 1995 WL 737929 at \*14. Rejecting Medzam's claim that this was an exceptional case, the court declined to award attorney fees. In *S.C. Johnson & Son v. Carter–Wallace, Inc.*, 781 F.2d 198, 201, 228 USPQ 367, 369 (Fed.Cir. 1986) we explained that "[t]he trial judge is in the best position to weigh considerations such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." The denial of attorney fees is affirmed.

No costs.

*AFFIRMED.*