**PITNEY BOWES, INC.,**
**Plaintiff/Counter–**
**Defendant,**

v.

**SUDBURY SYSTEMS, INC.,**
**Defendant/Third–Party**
**Plaintiff,**

v.

**Dictaphone Corporation, Third–Party**
**Defendant/Counterclaimant.**

No. Civ.A.3–95–CV–276JCH.

United States District Court,
D. Connecticut.

Nov. 8, 2000.

Michael J. Dorney, Jacqueline D. Bucar, Tyler, Cooper & Alcorn, New Haven, CT, Michael V. Ciresi, William E. Dorigan, Andrew W. Horstman, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for plaintiff.

Daniel J. Gleason, Nutter, McClennen & Fish, Boston, MA, James T. Shearin, Sheila Anne Denton, Pullman & Comley, Bridgeport, CT, for Sudbury Systems, Inc., defendant.

Michael J. Dorney, Jacqueline D. Bucar, Tyler, Cooper & Alcorn, New Haven, CT, Michael V. Ciresi, William E. Dorigan, Andrew W. Horstman, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for Dictaphone Corp., defendant.

## RULING ON PLAINTIFF'S AND THIRD PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT'S COUNTERCLAIM AND THIRD-PARTY CLAIM [DKT. NO. 147]

HALL, District Judge.

This case arises from a patent dispute. The plaintiff, Pitney Bowes, Inc. ("Pitney"), originally sued the defendant, Sudbury Systems, Inc. ("Sudbury"), alleging that Sudbury intentionally interfered with Pitney's advantageous business relationships with prospective buyers of its wholly owned subsidiary, Dictaphone Corporation ("Dictaphone"), and that a patent owned by Sudbury was invalid and unenforceable. Sudbury filed a counterclaim against Pitney and a third-party complaint against Dictaphone, alleging that Dictaphone's products infringed on one of its patents. The court dismissed Pitney's claim for tortious interference with business expectancy, leaving the patent dispute as the only issue in the case. *See* Ruling on Motion for Summary Judgment by Plaintiff and Third–Party Defendant; and on Defendant's Motions for Summary Judgment [Dkt. No. 126] at 18–22. Pitney and Dictaphone filed a motion for summary judgment against Sudbury's counterclaim and third-party complaint. For the reasons stated below, the court DENIES the motion for summary judgment.

## I. FACTUAL BACKGROUND

The issues in this case revolve around a patent owned by defendant/third-party plaintiff Sudbury.[1] In a previous ruling, the court held Sudbury to be the rightful owner of U.S.Patent No. 4,260,854 ("'854 patent"). *See id.* 18. The patented invention allows multiple callers to record and/or retrieve voice messages rapidly and simultaneously. Sudbury alleges that certain Dictaphone dictation products infringe Claim 12 of the '854 patent.

The court held a *Markman* hearing to address the issue of claim construction. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Following the hearing, the court construed the meaning of certain terms within Claim 12 of the '854 patent.[2] *See* Memorandum of Decision and Order [Dkt. No. 146]. The court found that both the first element and fourth element of Claim 12 invoke a "means-plus-function" element under 35 U.S.C. § 112, ¶ 6. There-

---

1. The court assumes familiarity with the factual background of the case as detailed in the court's Ruling on Motion for Summary Judgment by Plaintiff and Third–Party Defendant; and on Defendant's Motions for Summary Judgment. Dkt. No. 126.

2. Claim 12 of the '854 patent provides as follows.

 A simultaneous multiple access information storage and retrieval system comprising in combination:

 magnetic recording and playback means including means for storing audio information;

 a plurality of input devices capable of simultaneously providing audio information to said means for sorting audio information;

 a plurality of audio output devices capable of simultaneously and selectively reproducing said stored audio information in said magnetic recording and playback means;

 electronic components including means for simultaneously maintaining the interchange of audio signals between said input devices and one location in said recording and playback means and said output devices and another location in said recording and playback means.

 '854 Patent, Col. 18, lines 43–59.

fore, the court interpreted the elements according to the "structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. In so doing, the court concluded, first, that the phrase "magnetic recording and play-back means" is limited to the recording and playback of analog audio information by means of multiple magnetic tape re-corders and, second, that the "electronic components" referred to in the fourth element of Claim 12 are limited to compo-nents that are appropriate for use with multiple magnetic tape recorders.

Pitney and Dictaphone filed a motion for summary judgment based on two argu-ments. First, they allege that Claim 12 of the '854 Patent is invalid as a matter of law because the U.S.Patent Number 3,553,378 ("Alter patent") anticipates every element of Claim 12. Second, they argue that, as a matter of law, the accused Dicta-phone products do not infringe the '854 Patent either literally or under the doc-trine of equivalents and, therefore, no gen-uine issues of material fact exist. Sudbury argues that the '854 Patent is not invalid because the Alter patent does not contain all of the elements of '854 and, further, that genuine issues of material fact exist as to whether the Dictaphone products in-fringe the '854 patent. For the reasons stated below, the court agrees with Sud-bury.

## II. DISCUSSION

Under Fed.R.Civ.P. 56(c), "[s]ummary judgment is appropriate only if the plead-ings and evidentiary submissions demon-strate the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Tasini v. New York Times Co., Inc.*, 206 F.3d 161, 165 (2d Cir.2000); *see also Celo-tex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must draw all infer-ences and resolve all ambiguities in favor of the non-moving party. *See Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir.1997); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir.1994). Suits for patent infringement typically raise numerous and complex fact issues that make them inap-propriate for summary disposition. *Chore–Time Equipment, Inc. v. Cumber-land Corp.*, 713 F.2d 774, 778 (Fed.Cir. 1983). However, where no issue of materi-al fact is present and no rational jury could find in favor of the non-moving party, courts should not hesitate to grant sum-mary judgment regardless of the type of suit. *See id.* at 778–79; *Heilweil*, 32 F.3d at 721.

## A. ANTICIPATION

■ A patent that has been examined and duly granted is presumed to be valid. 35 U.S.C. § 282; *see Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.*, 98 F.3d 1563, 1569 (Fed. Cir.1996), cert. den., 520 U.S. 1230, 117 S.Ct. 1822, 137 L.Ed.2d 1030 (1997). A party challenging the validity of a patent must thus present clear and convincing evidence that the patent is invalid. *Id.*

■ A single piece of relevant prior art that contains all the elements of a claimed product, either expressly or inher-ently, is said to anticipate the claimed product. *See In Re Schreiber*, 128 F.3d 1473, 1477 (Fed.Cir.1997); *General Elec. Co. v. Hoechst Celanese Corp.*, 740 F.Supp. 305, 312–13 (D.Del.1990). When a product is anticipated, it is not new and, therefore, it is not patentable. *See* 35 U.S.C. § 102(b).[3] In order for a product to be anticipated, each and every element of the claimed invention must be embodied in a single· prior art device or practice. *See*

---

3. Under 35 U.S.C. § 102(b), "[a] person shall be entitled to a patent unless—(b) the inven-tion was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the applica-tion for patent in the United States[.]"

*Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576 (Fed.Cir. 1991). "There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention." *Scripps Clinic,* 927 at 1576. Such a determination is a question of fact. *See id.* "In deciding the issue of anticipation, the trier of fact must identify the elements of the claims, determine their meaning in light of the specification and prosecution history, and identify corresponding elements disclosed in the allegedly anticipating reference." *Lindemann Maschinenfabrik GMBH v. Am. Hoist and Derrick Co.,* 730 F.2d, 1452, 1458 (Fed.Cir.1984).

Pitney and Dictaphone argue that Claim 12 of the '854 patent is invalid under 35 U.S.C. § 102(b) because the Alter patent, issued on January 5, 1971, reveals the same invention and thus anticipates Claim 12. According to Pitney and Dictaphone, the Alter patent, like the '854 patent, "discloses the use of multiple tape recorders in order to provide access to multiple users to store and retrieve information and also provides the switching mechanism to make the connections between the banks of multiple tape recorders and multiple users." Mem. of Pitney Bowes Inc. and Dictaphone Corp. in Support of Motion for Summary Judgment Against the Counterclaim and Third–Party complaint of Sudbury systems, Inc. [Dkt. No. 148] at 7 [hereinafter "Pitney Mem."].

Sudbury responds that the Alter patent does not anticipate Claim 12 as a matter of law because genuine issues of material fact exist regarding whether the Alter patent provides for recording multiple messages and discloses multiplexing circuitry or simultaneous recording of messages. According to Sudbury, the second and fourth elements of Claim 12 of the '854 patent cannot be found in the Alter patent. In addition, Sudbury argues that, because proof of anticipation requires a factual analysis, expert testimony is required to address whether a person skilled in the art would find no differences between the Claim 12 of the '854 patent and the Alter patent.

The Alter patent claims an information retrieval apparatus that makes stored information accessible automatically or semiautomatically. Alter Patent, Col. 11–14. Such an information retrieval system was designed to be used, for example, by airlines as an efficient way to give updated information about specific flights. A caller calls into a recorded message that gives general instructions to all callers. The caller then enters a number (e.g., a flight number) and a cross bar switch operates in response to that code by directing the call to a specific recorded message. The Alter product stores messages on individual magnetic tape decks with replaceable endless tape cartridges, but the patent specifically provides that any recording device that will record information and respond to electric signals to play back information can be substituted. Alter Patent, Col. 2, lines 56–65. Through the cross bar switch, multiple callers are able to access multiple programs (e.g., information about different flights) through several connected lines. The Alter patent provides for one dedicated line exclusively for recording information so that the information can be modified and updated as necessary (e.g., flight delays). A message can be simultaneously recorded and played to a caller so that the caller always receives the updated information.

Claim 12 of the '854 patent claims "[a] simultaneous multiple access information storage and retrieval system." '854 Patent, Col. 18, lines 43–44. The second element in Claim 12 provides for "a plurality of input devices capable of simultaneously providing audio information to said means for storing audio information[.]" '854 Patent, Col. 18, lines 47–49. The fourth element provides for "electronic components including means for simultaneously maintaining the interchange of audio signals between said input devices and one location in said recording and playback means

and between said output devices and another location in said recording and playback means." *Id.* at Col. 18, lines 54–59.

The Alter patent does not explicitly provide for a multiplexing interchange as the fourth element of the '854 patent provides. Instead, the Alter patent provides for a cross bar switch to connect separate lines. In addition, the Alter patent does not explicitly provide for a plurality of input devices as the second element of the '854 patent does. Instead, the Alter patent provides for one designated line for inputting information into the system.

■ Pitney and Dictaphone argue, however, that the Alter patent inherently contains these elements because that system allows callers to be connected to a recorder at the same time as others and contains a component suitable for use with multiple magnetic tape recorders. A product can anticipate another even when the prior art inherently rather than explicitly discloses all the elements of a claimed product. *Atlas Powder Co. v. Ireco Inc. & ICI*, 190 F.3d 1342, 1347 (Fed.Cir.1999). "Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates." *Id.*

■ The Alter patent provides for one designated line for inputting any changes in information. Claim 12 of the '854 patent provides for multiple individuals to input information through dictation. Pitney and Dictaphone conclude that all of the available lines in the Alter product are inherently capable of receiving inputted information even though the specific product described used only one dedicated line for this purpose. However, the standard that must be satisfied is whether a person of ordinary skill in the art would find no difference between a single dedicated line

and multiple input devices. *See Scripps Clinic*, 927 F.2d at 1576. Pitney and Dictaphone have not established that as a matter of law a person of ordinary skill in the art would make such a finding.[4] Thus, the court finds that genuine issues of material fact exist as to whether the Alter patent anticipated the second element of Claim 12.

Pitney and Dictaphone similarly conclude that, because a cross bar switch is compatible for use with the multiple magnetic tape recorders disclosed in Claim 12 of the '854 patent, the Alter patent anticipates the fourth element of Claim 12. The '854 patent discloses audio multiplexing between a tape recorder and a communications channel in order to connect multiple tape recorders to multiple users. *See* '854 patent, Col. 2, lines 61–65; Col. 11, lines 16–23; Col. 13, lines 35–47. Multiplexing is a way of maintaining an interchange between users through the same line. The cross bar switch disclosed in the Alter patent does not involve the sharing of lines but connects one line to another. It can take a signal from more than one line but it still requires connection of the lines. Thus, while both systems allow for multiple users, they do so in seemingly different ways. Pitney and Dictaphone have not established that as a matter of law a person of ordinary skill in the art would find no difference between the kind of multiplexing described in the '854 patent and the function of the cross bar switch. Therefore, the court finds that genuine issues of material fact exist as to whether the Alter patent anticipates the fourth element of Claim 12 of the '854 patent.

As the Federal Circuit found in *Scripps Clinic*, "[t]he need to consider [these issues], on disputed factual premises, ... negates the propriety of the grant of sum-

---

4. The only evidence of what a person of ordinary skill in the art would conclude was presented by Sudbury. Dr. Anthony Acampora, a technical expert in this case, concluded that the Alter patent includes message retrieval but does not include a provision for simulta-

neous multiple message recording as provided for in the '854 patent. *See* Declaration of Dr. Anthony S. Acampora in Support of Sudbury Systems' Opp. to Pitney Bowes' Motion for Summary Judgment [Dkt. No. 154] ¶ 17 [hereinafter Acampora Decl.].

mary judgment based on anticipation." *Scripps Clinic*, 927 F.2d at 1578. Based on the record available, the court finds that genuine questions of material fact exist regarding whether the Alter patent anticipates Claim 12 of the '854 patent.[5] Therefore, summary judgment based on anticipation is denied.

**B. INFRINGEMENT**

 Summary judgment on the issue of infringement must be approached with great care. *Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 528 (Fed.Cir.1996). Because infringement itself is a fact issue, generally a motion for summary judgment of infringement or non-infringement will be inappropriate. *Chemical Eng'g Corp. v. Essef Indus., Inc.*, 795 F.2d 1565, 1571 (Fed. Cir.1986); *D.M.I., Inc. v. Deere & Co.* 755 F.2d 1570, 1573 (Fed.Cir.1985). However, if comparison of a properly interpreted claim with a stipulated or uncontested description of an accused device or process reflects a complete absence of material fact issues, summary judgment is appropriate. *Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1557 (Fed.Cir.1996); *D.M.I., Inc.*, 755 F.2d at 1573; *see also Chemical Eng'g Corp.*, 795 F.2d at 1571. Non-infringement under the doctrine of equivalents is also a matter that can be resolved by summary judgment, if it is clear that no actual infringement under the doctrine of equivalents can be found. *Brenner v. United States*, 773 F.2d 306, 307 (Fed.Cir.1985). Infringement, both literal and under the doctrine of equivalents, is determined by comparing an accused product or process with the previously construed claims in suit. *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed.Cir.1985).

**1. Literal Infringement**

 Literal infringement is found where the accused device falls within the scope of the asserted claims as properly interpreted. *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542 (Fed.Cir.1994). Each limitation of the claim must be met by the accused device exactly and any deviation from the claim precludes a finding of infringement. *Id.* Thus, if an accused product does not contain an express claim limitation, there can be no literal infringement as a matter of law. *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1198 (Fed.Cir.1994).

Analysis of literal infringement is a two step inquiry. First, the scope of the asserted claims and the meaning of the words used to describe the claimed function are determined as a matter of law through claim construction. *See Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed.Cir.1995); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1479 (Fed.Cir.1998). Second, a factual finding is made of whether the properly construed claims encompass the accused structure. *See id.* Often the question of literal infringement is resolved upon the court's construction of the claims. *See ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 540 (Fed.Cir.1998). Thus, "a court may grant summary judgment when, upon construction of the claims and with all reasonable factual inferences drawn in favor of the non-movant, it is apparent that only one conclusion as to infringement could be reached by a reasonable jury." *Id.*

 The parties refer only to the first and fourth elements of Claim 12 in discussing infringement in their summary judgment papers. The court found that the first element of Claim 12 of the '854 patent is a means-plus-function element under 35 U.S.C. § 112, ¶ 6. *See* Memorandum of Decision and Order [Dkt. No. 146] at 3–5. Sudbury did not dispute that the fourth

___

5. Even the cases Pitney and Dictaphone rely on to support a finding of anticipation were not decided on summary judgment. Anticipation was found in those cases by the trier of fact after hearing all of the evidence. *See In re Schreiber*, 128 F.3d at 1475–85; *Atlas Powder Co.*, 190 F.3d at 1343–46.

element of Claim 12 is also a means-plus-function element. *See id.* at 7. Literal infringement of a means-plus-function element requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification. *See, e.g., Al–Site Corp. v. VSI Int'l, Inc.,* 174 F.3d 1308, 1320–21 (Fed.Cir.1999); *Valmont Industries v. Reinke Manuf. Co., Inc.,* 983 F.2d 1039, 1042 (Fed.Cir.1993). Infringement depends on a showing of both identity of function and equivalency of means. *See, e.g., King Instruments Corp. v. Perego,* 65 F.3d 941, 945–46 (Fed.Cir.1995). "In order to meet a means-plus-function limitation, an accused device must (1) perform the identical function recited in the means limitation and (2) perform that function using the structure disclosed in the specification or an equivalent structure." *Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.,* 15 F.3d 1573, 1578 (Fed.Cir.1993). Therefore, where either (1) the function of a means-plus-function limitation is absent in an accused device, or, (2) the means is not identical or equivalent, there can be no literal infringement of the claim. *See Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1388–89 (Fed. Cir.1992).

The court thus considers whether genuine issues of material fact exist as to function.[6] Pitney and Dictaphone contend that the accused Dictaphone products do not perform functions identical to the '854 patent. They argue that Claim 12 specifies limited functions of "recording and playing back analog audio information" and "maintaining a connection between multiple tape recorders and multiple input/output devices." According to Pitney and Dictaphone, the Dictaphone products store and receive digital signals on a single hard disk

and, thus, do not perform an identical function. Sudbury responds that the functions recited in Claim 12 are actually broader, asserting that the functions are "magnetic recording and playback" and "storing audio information." According to Sudbury, the Dictaphone products perform these functions.

■ Section 112, ¶ 6 "does not permit limitation [or expansion] of a means-plus-function claim by adopting a function different from that explicitly recited in the claim." *Micro Chemical, Inc. v. Great Plains Chemical Co., Inc.,* 194 F.3d 1250, 1258 (Fed.Cir.1999). Only the claim language can be used to identify function. *Id.* In this case, Claim 12 recites means for performing a specified function. The first element recites "magnetic recording and playback means … *for storing audio information.*" '854 Patent, Col. 18, lines 45–46 (emphasis added). The fourth element recites "means *for simultaneously maintaining the interchange of audio signals*" between the input and output devices. '854 Patent, Col. 18, lines 54–59 (emphasis added). Thus, the recited functions in the first and fourth elements are "storing audio information" and "maintaining the interchange of audio signals."

■ Pitney and Dictaphone argue that the Dictaphone products cannot perform the same functions recited in the first and fourth elements because they store information in digital rather than analog format. However, the only functions recited involve the storage of audio information and the interchange of audio signals. The recited functions do not specify the storage format. Whether the information is stored in a digital format or an analog format does not necessarily change the fact that the information stored is audio information.[7] Pitney and Dictaphone have not

6. Pitney and Dictaphone argue only that the Dictaphone products do not perform the same function as Claim 12. They do not discuss the structures used to perform the functions. Therefore, the court does not reach the second part of the § 112, ¶ 6 infringement analy-

sis, whether the accused device performs the identical function through an identical or equivalent structure.

7. In its claim construction ruling, this court limited the means used for performing the

established that, as a matter of law, storing audio information in a different format alters the function of recording and playback.. Therefore, summary judgment on the literal infringement claim is denied.

## 2. Doctrine of Equivalents

 Even if the requirements of literal infringement are not met, infringement may still be found if the structures are equivalent under the doctrine of equivalents. *See K–2 Corp. v. Salomon S.A.*, 191 F.3d 1356 (Fed.Cir.1999). When analyzing mechanical devices, the doctrine of equivalence requires a three-part test for determining whether the claimed invention and the accused product are equivalent. *See Warner–Jenkinson v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39–40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997); *Valmont*, 983 F.2d at 1043. The test asks whether the accused device performs substantially the same function in substantially the same way to obtain substantially the same result as the claimed invention. *Valmont*, 983 F.2d at 1043. Equivalence of subsequently developed devices is not established by showing only accomplishment of the same result. *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1568 (Fed.Cir.1996). All of the claim elements or functions must be present in the accused device, literally or by an equivalent element or function, and the patentee is precluded from reaching any subject matter that was disclaimed in order to obtain the patent. *Warner–Jenkinson*, 520 U.S. at 39–41, 117 S.Ct. 1040; *Multiform*, 133 F.3d at 1480. Thus, the trier of fact, applying the claims as construed by the court, finds whether the accused device, element by element, is equivalent to that which has been patented. *Multiform*, 133 F.3d at 1480.

In *Warner–Jenkinson*, the Supreme Court framed the doctrine of equivalents analysis. *See Warner–Jenkinson*, 520 U.S. at 39–41, 117 S.Ct. 1040. "The determination of equivalence should be applied

as an objective inquiry on an element-by-element basis." *Id.* at 40, 117 S.Ct. 1353. The doctrine of equivalents cannot be used to ignore the actual language of a patent. *See K–2 Corp.*, 191 F.3d at 1367. The text of the claim must be carefully followed and the doctrine of equivalents must be applied to each element of a claim. *Id.* "Therefore, the doctrine of equivalents cannot be used to vitiate an element from the claim in its entirety." *Id.* Within these limitations, however, the purpose of the doctrine of equivalents remains to protect the patentee when, although not every detail of the claimed invention is used or found in the accused product, the structures are equivalent. *See id.* Thus, while the claim construction dictates that literal infringement could not be found where a single recording device was used, infringement under the doctrine of equivalents could still be found.

Pitney and Dictaphone argue that Claim 12 of the '854 patent is limited to multiple magnetic tape recorders and, because the Dictaphone products operate through a single recording disk, as a matter of law, the products cannot infringe the '854 patent under the doctrine of equivalents. Sudbury responds that none of the claim elements specifically require "multiple" recorders and that a single recording unit has corresponding features that make it a ready substitute for the multiple tape recorder system in Claim 12.

Considering each element of Claim 12, there is a material issue of fact as to whether any element is vitiated when applied to the single Dictaphone recording device. The relevant claim elements are "magnetic recording and playback" means capable of storing "audio information" and providing "simultaneously" access to input and output devices. '854 Patent, Col. 18, lines 43–59. The claim does not specify that the recording device must be a multiple tape recorder storage system. Further, nothing in the claim language estab-

---

functions to means that record and playback analog audio information. However, the rul-

ing does not change the recited function, which is not limited to analog information.

lishes, as a matter of law, that a single device could not satisfy these relevant claim elements just as effectively as a multiple recording system. Thus, genuine issues of material fact exist regarding whether the Dictaphone products infringe on the '854 patent under the doctrine of equivalents.

■■■ The court must determine, however, whether the doctrine of prosecution history estoppel precludes Sudbury from claiming that the Dictaphone products infringe on the '854 patent. "[P]rosecution history estoppel limits the range of equivalents available to a patentee by preventing recapture of subject matter surrendered during prosecution of the patent." *Southwall*, 54 F.3d at 1579. The standard for determining what subject matter was relinquished is objective, based on what a competitor would be reasonably entitled to conclude that the applicant gave up from the prosecution history. *See Mark I Mkt'g Corp. v. R.R. Donnelley & Sons*, 66 F.3d 285, 291 (Fed.Cir.1995). Prosecution history estoppel can arise by way of unmistakable assertions made to the Patent Office or by way of amendments to avoid prior art. *See Texas Instruments, Inc. v. Int'l Trade Comm'n*, 988 F.2d 1165, 1174 (Fed.Cir.1993).

■■■ For an assertion made during prosecution to estop an applicant from recapturing matter surrendered in the assertion, the assertion must include a "clear and unmistakable surrender of subject matter." *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 828 n. 3 (Fed.Cir.1999). Such an surrender can arise even when the argument was not necessary to distinguish prior art, but the applicant must make the surrender "unmistakable enough that the public may reasonably rely on it." *Id.*

In order to determine whether prosecution history estoppel applies based on an amendment made by the applicant, a court considers the reason for a rejection or objection by the patent officer and the manner in which any amendment addressed and avoided it. *See Warner–Jenkinson*, 520 U.S. at 32, 117 S.Ct. 1040. The Federal Circuit has established a burden shifting analysis that applies to determining the purpose of any amendment.

"If the claims were amended for a reason related to patentability, prosecution history estoppel applies. . . . [I]f the claims were amended for a reason that was not related to patentability, prosecution history estoppel does not apply absent a clear and unmistakable surrender of certain subject matter. . . . Finally, if the patent prosecution record does not disclose the reason for an amendment, a court must presume that the amendment was made for purposes of patentability and that prosecution history estoppel applies, and provide the patentee with an opportunity to rebut that presumption."

*Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 828 (Fed.Cir.1999) (internal quotations and citations omitted).

■■■ Pitney and Dictaphone claim that Sudbury disclaimed devices using a single medium or single storage mechanism in order to get approval of Claim 12 of the '854 patent over the Langendorf reference, United States Patent No. 3,647,485 ("Langendorf") and the Altonji reference, United States Patent No. 3,277,246 ("Altonji"). Sudbury argues that it distinguished over the Langendorf patent by arguing that, unlike that patent, '854 did not require an attendant to maintain caller access to pre-assigned storage areas. According to Sudbury, it was irrelevant whether Langendorf was read to disclose a single storage device or multiple storage device. Sudbury argues that it distinguished over the Altonji patent by narrowing Claim 12 to be limited to the simultaneous access feature for both storage and retrieval purposes. According to Sudbury, whether this process was done through a single storage device or multiple storage devices was irrelevant to the claim.

The '854 patent went through a series of rejections and was only approved after an appeal of the patent officer's final rejection. *See* Prosecution History of United States Patent No. 4,260,854, p. 223 [hereinafter P.H.]. Throughout the prosecution history, the patent officer's overriding concern for all of the claims in the '854 patent was that disclosure was inadequate under 35 U.S.C. § 112, ¶ 1. *See* P.H., p. 227. Specifically, the patent officer found that the claims did not enable an artisan to practice the claimed invention without experimentation or undue delay. *See* P.H., p. 225–28.

In its second action in the '854 prosecution, the patent officer rejected what is now Claim 12 as obvious over the Altonji patent. P.H., p. 097. The patent officer specifically stated that the only difference was the "desired result of the preamble of simultaneous multiple access" but that such a desired result was not a structural difference between '854 and Altonji. *Id.* Sudbury responded to this by amending what is now Claim 12 to recite "simultaneous multiple access" as a specific structural difference. P.H., p. 109. In doing so, Sudbury narrowed the second, third, and fourth elements of the claim to recite that storage, retrieval, and interchange occurred "simultaneously." P.H., p. 103. As amended the fourth element provided for "electronic components including means for virtually simultaneously maintaining the interchange ..." P.H., p. 103. The patent officer found that, as proposed, this element "raised new consideration of what is meant by virtually simultaneously as well as the scope of coverage of the claim." P.H., p. 152. "Virtually" was removed from the element and the patent officer made no further reference to this issue. Any further rejections of what is now Claim 12 were based on the general rejection of every Claim in the application based on inadequate disclosure. P.H., p. 169. No further amendments were made to Claim 12 before it was approved.

Based on this history, Claim 12 was amended for reasons of patentability because it was amended in order to distinguish it from the Altonji patent. Thus, prosecution history estoppel applies to anything disclaimed in making this amendment. In stating what would distinguish Claim 12 from the Altonji patent, the patent officer referred to "simultaneous multiple access." However, the amendment did not specify "multiple access." It specified "simultaneous maintenance of signals." The patent officer did not require any further amendment. Therefore, the amendment disclaimed any devices that did not provide for simultaneous connections, but did not disclaim devices using a single medium.

While other claims in the '854 patent were rejected as obvious over the Langendorf patent, Claim 12 was not. Therefore, the claim was never amended with respect to Langendorf and if anything was disclaimed from Claim 12 with regard to Langendorf, it was done so through assertions, not amendments. In distinguishing the '854 patent from Langendorf, Sudbury specifically emphasized the fact that Langendorf refers to a single recording unit rather than a "plurality of short message period magnetic tape recorders." While Sudbury made this distinction, it did not unmistakably surrender coverage of devices that use a single recording unit.

In distinguishing '854 from Langendorf, the focus of the distinction was on the fact that Sudbury did not require an attendant. P.H., p. 067. While it is true that Sudbury remarked as part of the discussion that Langendorf claimed only a single unit, it later acknowledged that it could be argued that Langendorf discloses the use of more than one unit. *Id.* at 066. The '854 patent was then distinguished because, whether Langendorf referred to a single unit or multiple units, it required an attendant and the '854 patent did not. *Id.* at 067. Descriptions of both inventions then refer to available recording space as opposed to specifying either a single recording unit or

multiple units. *Id.* at 067–68. Therefore, a competitor could reasonably conclude that the '854 patent gave up the requirement of an attendant, but could not reasonably conclude that the '854 patent gave up coverage of a single recording unit. Thus, Sudbury did not disclaim devices using a single recording unit and prosecution history estoppel does not preclude a finding of infringement in this case.

Genuine issues of material fact exist as to whether the Dictaphone products, though they do not use a multiple tape recording system, perform the same function in substantially the same way to achieve substantially the same result as the '854 patent. The prosecution history does not preclude this finding. Determining whether it actually is equivalent is a question of fact for the trier of fact to determine, and no evidence exists at this stage to indicate that a reasonable jury could not conclude that the Dictaphone products did infringe on the '854 patent under the doctrine of equivalents. Therefore, summary judgment on the doctrine of equivalents claim is denied.

### III. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment Against the Counterclaim and Third–Party Complaint of Sudbury Systems, Inc. [Dkt. No. 147] is DENIED.

**SO ORDERED.**