NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1387, -1439

REALSOURCE, INC. (doing business as RealSource Communications, Inc.),

Plaintiff-Appellant,

v.

BEST BUY CO., INC., BEST BUY ENTERPRISE SERVICES, INC.,
and BEST BUY STORES, LP,

Defendants-Cross Appellants,

and

CIRCUIT CITY STORES, INC., STARBUCKS CORP.,
WILLIAMS-SONOMA, INC., POTTERY BARN, INC.,
and SEATTLE'S BEST COFFEE, LLC,

Defendants-Appellees,

and

COSTCO WHOLESALE CORP.,

Defendant-Appellee,

and

LOWE'S COMPANIES, INC.,

Defendant.

L. Gene Spears, Baker Botts L.L.P., of Houston, Texas, argued for plaintiff-appellant. With him on the brief were Scott F. Partridge and Michael Hawes. Of counsel was Mitchell D. Lukin.

Emmett J. McMahon, Robins, Kaplan, Miller & Ciresi L.L.P., of Minneapolis, Minnesota, argued for defendants-cross appellants. With him on the brief was Bethany D. Krueger.

David E. Sipiora, Townsend and Townsend and Crew LLP, of Denver, Colorado, argued for defendants-appellees, Circuit City Stores, Inc., et al. With him on the brief were Kristopher L. Reed and Shelley B. Mixon.

Alan M. Fisch, Kaye Scholer LLP, of Washington, DC, argued for defendant-appellee, Costco Wholesale Corp.  With him on the brief were Jason F. Hoffman and R. William Sigler. Of counsel was Kelly Ambrose Clement.

Appealed from:  United States District Court for the Western District of Texas

Judge Lee Yeakel

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1387, -1439

REALSOURCE, INC., (doing business as RealSource Communications, Inc.),

Plaintiff-Appellant,

v.

BEST BUY CO., INC., BEST BUY ENTERPRISE SERVICES, INC.,
and BEST BUY STORES, LP,

Defendants-Cross Appellants,

and

CIRCUIT CITY STORES, INC., STARBUCKS CORP.,
WILLIAMS-SONOMA, INC., POTTERY BARN, INC.,
and SEATTLE'S BEST COFFEE, LLC,

Defendants-Appellees,

and

COSTCO WHOLESALE CORP.,

Defendant-Appellee,

and

LOWE'S COMPANIES, INC.,

Defendant.

Appeals from the United States District Court for the Western District of Texas
in case no. 04-CV-771, Judge Lee Yeakel

_____

DECIDED:  June 23, 2008
_____

Before MICHEL, <u>Chief Judge</u>, GAJARSA, <u>Circuit Judge</u>, and YOUNG, <u>District Judge</u>.[*]

YOUNG, <u>District Judge</u>.

Realsource, Inc. ("Realsource") appeals the United States District Court for the Western District of Texas's grant of summary judgment of noninfringement in favor of various defendants whom Realsource sued for infringement of U.S. Patent No. 5,732,136 (the "'136 patent"). <u>Realsource, Inc. v. Best Buy Co., et. al.</u>, 514 F. Supp. 2d 951, 960, 963 (W.D. Tex. 2007). Because we conclude that the district court's construction of the claim term upon which summary judgment primarily rests is correct, we affirm.

## I. BACKGROUND

In the early 1990s, Realsource provided pay telephone services and placed pay telephones on military bases in Alaska. Appellant's Br. at 7. Due to the practical difficulties associated with collecting coins from phones located so far from its Texas headquarters, Realsource chose to use phone cards to operate these phones. <u>Id.</u> At the time, phone cards were preloaded with a monetary value. Because no activation was necessary to use them, the cards could be used by whoever possessed them, and they thus were sometimes stolen during the shipping process. <u>Id.</u>

To resolve this dilemma, Realsource devised a system that allowed it to ship phone cards without any value stored on them. <u>Id.</u> at 8. When a customer wished to purchase a phone card, the vendor utilized equipment including, *inter alia*, a card reader and a modem

---

[*]     Honorable William G. Young, District Judge, United States District Court for the District of Massachusetts, sitting by designation.

to activate and to add value to the card.  Id.  The equipment used by the card vendor communicated with Realsource's computer in Texas to accomplish this task.  Id.  In 1998, Realsource disclosed this invention in the '136 patent.

The '136 patent describes a "merchant specific debit card verification system" designed to solve problems relating to inventory and security control.  '136 patent col. 1 ll. 1-2; 18-21.  As relevant here, the system covered by the '136 patent is designed to ensure customers who purchase "debit cards"[2] are able to use those cards only at locations specified by the retailer.  Id. at col. 2 ll. 7-10.  Central to this case are claims 1 and 5 of the '136 patent.

Claim 1 of the '136 patent teaches a "method of making a transaction,"[3] which is comprised of:

a. providing a debit card having at least one ID information stored thereon;

b. providing a terminal having at least one ID information stored thereon prior to the transaction wherein the ID information stored on the debit card relates to the ID information stored on the terminal in a predetermined manner;

c. retrieving via the terminal the ID information stored on the debit card so as to provide a retrieved ID information;

d. transmitting to a computer the retrieved ID information and the ID information stored on the terminal;

e. matching via the computer the ID information stored on the terminal with the retrieved ID information; and

---

[2]    The debit cards at issue are not the type of debit cards issued by financial institutions and linked to checking accounts.  Rather, the debit cards discussed herein are generally known as "gift cards," which are issued in lieu of paper gift certificates and permit a holder to charge purchases against the amount on the card and to retain the card to use the remaining balance at a later date.

[3]    The parties agree that "transaction" should be construed to mean "any transfer of value between two entities, such as a consumer and a merchant."  Realsource, Inc. v. Best Buy Co., et. al., No. A-04-CA-771-LY, slip op. at 10 (W.D. Tex. Mar. 17, 2007).

f. transmitting via the computer a validation to the terminal.

Id. at col. 6 ll. 49-67.

Claim 5 teaches the "apparatus of making a transaction," which is comprised of:

a debit card having at least one ID information stored thereon;

a terminal having at least one ID information stored thereon prior to the transaction wherein the ID information stored on the terminal relates to the ID information stored on the debit card in a predetermined manner;

card reader means communicating with the terminal for retrieving ID information stored on the debit card;

computer means disposed remotely from the terminal for matching the ID information stored on the terminal with the ID information stored on the card to determine whether the transaction is valid; and

communication means for transmitting the ID information stored on the debit card and the ID information stored on the terminal to the computer means such that the ID information stored on the debit card and the ID information stored on the terminal can be matched by the computer means.

Id. at col. 7 l. 30-col. 8 l. 9.

Reduced to its essence, a transaction following the method and apparatus taught in the patent goes as follows: First, a customer presents a debit card to a cashier. The cashier swipes the debit card through a card reader and uses her keypad to input the value that the customer wishes to add (if the debit card is being activated) or subtract (if the customer is making a purchase). The terminal sends the ID information retrieved from the card via the card reader, as well as the ID information stored on the terminal, to a computer, which then determines whether the pieces of information match and, accordingly, whether the debit card is being used at a location authorized by the retailer. If so, the cashier receives a validation message, and the transaction proceeds.

In December 2004, Realsource sued the defendant-appellees ("defendants"), Jt. App. at 25, alleging that the manner in which they validate debit card transactions infringes claims 1 and 5 of the '136 patent.[4]  The defendants are nationwide retailers and familiar household names: Best Buy Co., Best Buy Enterprise Services, Inc., and Best Buy Stores, LP (collectively, "Best Buy"); Circuit City Stores, Inc., Starbucks Corp., Williams-Sonoma, Inc., and Seattle's Best Coffee, LLC (collectively, "SWCP"); and Costco Wholesale Corp. ("Costco.").[5]

After a claim construction hearing, the district court issued an opinion that construed fifteen disputed claim terms.  Realsource, Inc. v. Best Buy, Co. et al., No. A-04-CA-771-LY (W.D. Tex. May 25, 2006).  Realsource conceded that, in light of the district court's construction of two particular claim limitations (either of which would be sufficient to justify the result), the defendants did not infringe the '136 patent either literally or by the doctrine of equivalents.[6]  Realsource, 514 F. Supp. 2d at 960.  The district court thus entered summary judgment of noninfringement in favor of the defendants on May 17, 2007.  Id. This appeal, over which we exercise jurisdiction pursuant to 28 U.S.C. § 1295(a)(1), followed.

Realsource mounts its major attack on the district court's construction of the term "ID information [stored on the debit card]" as that term is used in the disputed claims.

---

[4]     Realsource originally asserted claims 1, 2, 5, and 6.  After discovery, however, Realsource limited its infringement case to claims 1 and 5.  Appellant's Br. at 10.

[5]     Lowe's Companies, Inc. was originally a party to this appeal.  Upon its joint motion with Realsource, this court issued an order (docket entry 61) dismissing it from the case.

[6]     These limitations were "ID information [stored on the debit card]" and "matching."  Realsource and the defendants also agreed that summary judgment of literal noninfringement was appropriate based on the district court's construction of "terminal." Realsource, 514 F. Supp. 2d at 960.

See Appellant's Br. at 22. The district court construed this term to mean "encrypted data, excluding the card number, stored on the debit card in the form of merchant ID, store ID, or terminal ID." Realsource, 514 F. Supp. 2d at 953. This construction was "dispositive of the entire case," id. at 960, because none of the defendants' debit cards are encoded with a merchant ID, store ID, or terminal ID; in fact, the only information they contain relevant to this proceeding is the card number, a piece of information specifically excluded from the district court's construction of the term. Best Buy Br. at 19; Costco Br. at 26-27; SWCP Br. at 14; see also Realsource, 514 F. Supp. 2d at 953. Furthermore, the card number stored on the defendants' cards is not encrypted. See, e.g., Costco Br. at 26.

Realsource asks this court to vacate and remand the district court's grant of summary judgment of noninfringement, arguing that the district court made three errors when construing "ID information [stored on the debit card]." First, Realsource asserts the definition of "ID information" must include the card number. Appellant's Br. at 26-30. Second, Realsource disagrees that the term encompasses only merchant, store, or terminal ID. Id. at 30. Finally, Realsource contends the information stored on the debit need not be encrypted in order to satisfy the limitation. Id. at 30-32.

## II. ANALYSIS

Claim construction is matter of law that this court reviews without deference to the district court. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1451 (Fed. Cir. 1998) (en banc). When construing a claim, courts must give the words of the claim the ordinary and customary meaning that would be attributed to them by a person of ordinary skill in the art who reads them in the context of the specification and prosecution history. Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005). Indeed, "claims must be read in view of the

specification," <u>Markman v. Westview Instr., Inc.</u>, 52 F.3d 967, 979 (Fed. Cir. 1995), which usually "is the single best guide to the meaning of a disputed term," <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996). In addition, the prosecution history "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention." <u>Phillips</u>, 415 F.3d at 1317.

Realsource asserts that the ordinary meaning of "ID information," in the context of data stored on the debit card, includes the card number. Appellant's Br. at 28. "ID information," when considered in isolation, perhaps does not compel the contrary conclusion reached by the district court. Neither the district court nor this court, however, is permitted to determine the meaning of a disputed claim term "in a vacuum." <u>Medrad, Inc. v. MRI Devices Corp.</u>, 401 F.3d 1313, 1319 (Fed. Cir. 2005). Instead, we must read claims "in the context of the written description and the prosecution history." <u>Id.</u> These two sources, taken together, make clear that Realsource did not "regard[] its invention," 35 U.S.C. § 112, to encompass systems, such as those used by the defendants, whose debit cards contain no information other than the card number.

The claims as originally submitted utilized the term "ID property," not "ID information." <u>See</u> Jt. Appx. at 176, 178. During prosecution, however, the patent examiner objected to the use of the word "property" because "in the ordinary sense of the word, [property] is not something that can be stored" electronically. <u>Id.</u> at 197. Realsource thereafter changed "property" to "information" – something that <u>can</u> be stored electronically – to placate the patent examiner by "more clearly defin[ing] applicants' inventive concept." <u>Id.</u> at 207. Realsource at no time indicated that the change was one of substance rather

than semantics. In fact, the explanation of the substitution strongly suggests that the terms should be considered synonymous.

Comparing the claims to the specification reveals a parallelism that further supports the conclusion that "ID information" is the same as "ID property." Claims 1 and 5 teach that "the ID information stored on the debit card relates to the ID information stored on the terminal in a predetermined manner." '136 patent col. 6 ll. 55-58; id. at col. 7 ll. 35-38. The specification echoes claims 1 and 5, the only difference being that it states that the "ID property [stored on the merchant's terminal] corresponds in a predetermined manner to the ID property stored on the debit card."[7] Id. at col. 4 l. 43-46 (emphasis added). The specification thus reinforces the natural conclusion drawn by the reader of the patent given the prosecution history: the inventor intended "property" and "information" to be interchangeable.

Because the two terms strike us as synonymous in the context of the '136 patent, determining the scope of "ID information [stored on the debit card]" is a fairly straightforward task. The specification clearly demonstrates that the card number is not encompassed by the term "ID property" through its continued reference to ID property and card number as separate entities. See, e.g., '136 patent col. 1 ll. 32-35 ("The present invention discloses a method wherein . . . debit cards [have] a card number and at least

---

[7]     While the specification does indicate that the card number is retrieved from the debit card and sent by the merchant's terminal to the computer, see, e.g., '136 patent col. 4 ll. 10-13, it does not appear to contemplate that the card number will be used in the data comparison necessary to validate the transaction. See id. at col. 4 ll. 25-31 (explaining that although computer receives card number and merchant ID, only the merchant ID field is used in the comparison); id. at col. 4 ll. 40-55. Since claims 1 and 5 teach that the "ID information stored on the debit card relates to the ID information stored on the terminal," id. at col. 6 ll. 55-58; id. at col. 7 ll. 36-39, the fact that the specification fails ever to indicate that the card number might be used in making such a comparison is

one encrypted ID property stored thereon.") (emphasis added); id. at col. 1 ll. 41-43 (explaining the "card number and the encrypted ID property are retrieved via the merchant's terminal") (emphasis added).

In sum, the prosecution history and specification indicate that the "ID property" referenced in the specification is the same as the "ID information" discussed in the claims. At the same time, the specification makes clear that the card number is not an "ID property." Thus, a person of ordinary skill in the art would have understood the card number to be excluded from the definition of "ID information [stored on the debit card]."

Realsource argues to the contrary, pointing out that it stated, when it substituted "information" for "property," that the "basis for the term 'information' is found on page 4 of the specification." Appellant's Br. at 29 (citing Jt. Appx. at 207). Realsource asserts that it was referring to the following portion of the specification:

> The information contained on the magnetic stripe [of the debit card] comprises a card record, which preferably contains the following encrypted data fields: merchant ID and card number. As explained below, the card record may further contain the following optional encrypted data fields: terminal ID and store ID.

Id.

This argument is unavailing given the analysis above. Furthermore, this portion of the specification defines the data fields stored on the debit card's magnetic stripe only as "information." The claim, however, uses "ID information." The presence of a modifier before "information" in the claims – one which naturally corresponds to merchant ID, store ID, or terminal ID – indicates that the claims refer to a subset of the data fields listed in this portion of the specification. It is not a stretch to see how card number would be excluded.

notable.

In addition, claim differentiation here has no effect on whether "ID information [stored on the debit card]" includes the card number. Realsource argues that this doctrine compels the conclusion that "ID information" in claims 1 and 5 includes the card number because dependent claims 2 and 6 cover the method of claims 1 and 5 wherein "ID information is selected [from a group] consisting of merchant ID, terminal ID, and store ID." Appellant's Br. at 26-27. As an initial matter, the doctrine of claim differentiation is a presumption, not a rigid rule. Comark Commc'n, Inc. v. Harris Corp., 156 F.3d 1182, 1187 (Fed. Cir. 1998). If a patent's specification makes clear the scope of the claim language, claim differentiation cannot be used to broaden the claim's scope. Multiform Dessicants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1480 (Fed. Cir. 1998). That aside, Realsource's argument is inherently flawed. While claim differentiation may indicate that the scope of an independent claim is broader than that of a dependent claim, Phillips, 415 F.3d at 1315, it does not speak to what exactly is encompassed by the independent claim. Thus, while claim differentiation may suggest that merchant ID, store ID, and terminal ID are not the only pieces of information that may qualify as "ID information," it does not mandate that any specific piece of information – such as the card number -- be included in the definition of the term.[8]

### III. CONCLUSION

For the foregoing reasons, it is plain that a person of ordinary skill in the art, reading the patent in light of the specification and prosecution history, would understand Realsource's exchange of "information" for "property" in the asserted claims to be only a

---

[8]    Indeed, the defendants suggest alternative pieces of information that are much closer in nature to merchant, store, and terminal ID than the card number and that could also be considered "ID information." See, e.g., Best Buy Br. at 24 (suggesting that a retailer could use the "geographical ID" property to limit the use of debit cards to a particular area of the country).

substitution of a more appropriate, but functionally equivalent, word to assuage the patent examiner's concerns about clarity. In addition, we note that counsel for Realsource frankly admitted during argument that his client had no intention to expand the scope of the asserted claims by making the change in claim language. Oral Arg. at 39:13-39:24, available at http://www.cafc.uscourts.gov/oralarguments/mp3/2007-1387.mp3; see also 35 U.S.C. § 112 (permitting an inventor to "claim[] the subject matter which [he] regards as his invention") (emphasis added); Phillips, 415 F.3d at 1316 ("Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors . . . intended to envelop with the claim."). Accordingly, the district court was correct to exclude the card number, which the specification clearly distinguishes from "ID property," from the meaning of "ID information [stored on the debit card]" and to grant summary judgment in the defendants' favor.

Having upheld the propriety of the district court's decision to exclude the card number from the construction of the term "ID information [stored on the debit card]," we need not reach the additional questions of claim construction Realsource has presented to this court, and we express no opinion thereon. Nor need we address Best Buy's cross-appeal of the district court's denial of summary judgment of noninfringement as to the terminal limitation by the doctrine of equivalents. The decision of the district court must be, and hereby is

<u>AFFIRMED.</u>